Susan E. **GORDON**

v.

James R. **STEELE** et al.

Civ. A. No. 36–73 Erie.

United States District Court,
W. D. Pennsylvania.

May 31, 1974.

Andrew Conner, Will Schaaf, John McLaughlin, Erie, Pa., for defendants.

OPINION

KNOX, District Judge.

The problems of students have lately become numerous with respect to their legal status and the law with respect to them is in a constant state of flux. In recent years, there has been a deluge of litigation with respect to the residence of students for voting purposes. See Shivelhood v. Davis, 336 F.Supp. 1111 (D.Vt.1971). See also Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L. Ed.2d 675 (1965) with respect to military personnel in a state. The very size of this problem is shown by the extensive annotation on voting-residence of students in 44 A.L.R.3d 797 annotating Wilkins v. Bentley, 385 Mich. 670, 189 N.W.2d 423 (1971). The other situation which is a prolific source of litigation is the question of tuition fees charged by state colleges and universities to non-resident students where the state is required to set up extensive standards in an endeavor to determine who is a resi-

dent and who is a non-resident. See for example Wurzer v. University of Houston, 487 F.2d 612 (5th Cir. 1973). It was inevitable that the federal courts would soon feel the impact of this litigation with respect to problems arising under diversity jurisdiction.[1] Thinking of the courts in this area is probably colored by numerous constitutional and statutory provisions in various states to the effect that no one shall be deemed to have gained or lost a residence by attendance at an institution of higher learning.

■ The thinking is also colored by the traditional rule that the fact that a college student is supposedly maintained by his or her parents is a strong circumstance indicating no gain of residence in the college town. See 44 A.L.R.3d 822 and this is in accord with Restatement of Conflicts of Laws, Section 30, that a minor child has the same domicile as its father. In these days when nearly all the state legislatures have reduced the age of majority to 18, this poses a more pressing problem with respect to college students who can no longer be put off with the explanation that those under 21 are minors and hence continue their residence with their parents. See the various acts of the Pennsylvania Legislature approved June 16, 1972, particularly 73 Purdon's Pa.Stats. § 2021 permitting persons 18 years of age and older to enter into legal contracts and depriving such persons of the defense of minority.

The plaintiff Susan Gordon is one of those who was benefited by the provisions of the aforesaid emancipation acts of June 16, 1972. She was born November 20, 1953 and hence was 18 years of age at the time the cause of action hereinmentioned arose and was 19 at the time this action was brought, April 10, 1973.

The action is one for malpractice against two physicians and an osteopathic hospital in Erie County, Pennsylvania. All of the defendants are citizens of Pennsylvania. There seems little question that prior to August 9, 1972, the plaintiff was also a citizen of Pennsylvania, residing at 227 Goodrich Street, Erie, Pennsylvania, with her parents and if this continued to be her address, her suit must fail for lack of diversity jurisdiction.

She complains that she suffered an injury to her wrist on February 25, 1972, and there was wrongful diagnosis as to the existence of fractures in the bones by the defendants at that time. She claims that they concluded that there were no such fractures and that as a result. she endured continuing pain and disability resulting in hospitalization and medical attention and that her wrist and right hand remain at least partly disabled as the result of the alleged malpractice.

On August 9, 1972, plaintiff enrolled in Ricks College at Rexburg, Idaho where she rented an apartment which she has retained ever since. Defendants on January 21, 1974, moved to dismiss for lack of diversity. Briefs have been filed, arguments held and the court postponed decision on the matter until further depositions of the plaintiff could be taken. The matter is now before the court for disposition.

■■ We approach the problem recognizing, of course, that it is citizenship at the time of filing suit, in this case April 10, 1973, which is controlling. Spears v. Ohio River Company, 406 F.2d 344 (3d Cir. 1969). Further, the rule is unquestioned that where plaintiff is challenged on her claim of diversity, the burden is upon her to show by convincing evidence that diversity jurisdiction

---

1. Citing 28 U.S.C. § 1332 Diversity of Citizenship:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;
(2) citizens of a State, and foreign states or citizens or subjects thereof; and
(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties."

exists. Krasnov v. Dinan, 465 F.2d 1298 (3d Cir. 1972).

As is required in all of such cases, we must reckon up the indicators pointing for and against acquisition of a new domicile for diversity jurisdiction purposes. Defendant claims that the following indicate that plaintiff is still a citizen of Pennsylvania and has not acquired a new residence or citizenship in Idaho:

(1) At the time of application for admission to the college at Rexburg, Idaho, she gave her address as Erie, Pennsylvania.

(2) The college records dated in 1972 show her address as Erie, Pennsylvania. The same is true of the college records dated May 4, 1973.

(3) During summer vacations, she worked in Erie, Pennsylvania.

(4) She held a Pennsylvania Driver's License and had a bank account in Erie.

(5) She came to Erie for Christmas vacations.

(6) While Ricks College is a Mormon Church Institution, the supplemental depositions which were taken at the request of the court indicate that females unlike males are generally not required to participate in the missionary activity of the church and that she has no present intentions of participating in such missionary work which, of course, might take her to any part of the world.

On the other side of the ledger, plaintiff points to the following:

(1) Her expressed intention is not to return to Pennsylvania. This, of course, is a very strong factor in a situation where subjective intent plays a part in determining what is her animo manendi.

(2) She has an apartment in Rexburg which she regards as her residence and this is not sublet during various times of the year but remains hers.

(3) She states she came back to Erie only one summer in 1973 because of her eye problems and that she took eye treatment in Erie and Cleveland.

(4) She claims that her purpose in visiting at Christmas 1973 was to be de-posed and for medical appointments. She has not returned to Erie during Spring or Thanksgiving vacations.

(5) Her religious desires as a sincere Mormon are to further her faith and insure that she marries in a Mormon Temple to someone of her faith. At the present time, she has no present plans of marrying anyone but she does desire to marry in her faith and claims that the opportunities for such a marriage in Erie are very small and that she would be unable to marry in a Temple here.

(6) She has introduced exhibits showing that she is a member of the Blue Cross of Idaho, becoming a subscriber in 1972.

(7) She claims she may locate after graduation in any other of the 49 states or abroad. She may, of course, return to Pennsylvania. She, like many other females, has vague intentions of marrying some day but does not know to whom and in such case it is likely that she would follow her husband where his work may take him.

We recognize that the problem of students' residence is not altogether a new one but has concerned the federal courts since Chicago and Northwestern Railway Company v. Ohle, 117 U.S. 123, 6 S.Ct. 632, 29 L.Ed. 837 (1886) where the court held that determinations of a domicile were a matter to be determined by the trier of fact.

The most recent exposition of the law on this subject for our edification by the Third Circuit is found in Krasnov v. Dinan, 465 F.2d 1298 (3d Cir. 1972) from which we quote at length:

*"It is the citizenship of the parties at the time the action is commenced which is controlling.* Brough v. Strathmann Supply Co., 358 F.2d 374 (3d Cir. 1966). One domiciled in a state when a suit is begun is 'a citizen of that state within the meaning of the Constitution, art. 3, § 2, and the Judicial Code. . . .' "

\* \* \* \* \* \*

*"The fact of residency must be coupled with a finding of intent to re-*

*main indefinitely.* Proof of intent to remain permanently is not the test. 'If the new state is to be one's home for an *indefinite period of time, he has acquired a new domicile.'* Gallagher v. Philadelphia Transp. Co., supra, 185 F.2d (543) at 546. *Where jurisdictional allegations are traversed, as here, 'the burden of showing . . . that the federal court has jurisdiction rests upon the complainants.'* Gibbs v. Buck, 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939); Tanzymore v. Bethlehem Steel Corp., 3 Cir., 457 F.2d 1320, supra; Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971). 'In determining whether a party has intended to establish a domicile in the state to which he has moved, the factfinder will look to such circumstances as his declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business.' Wright Federal Courts § 26, at 87 (2d ed. 1970); Mitchell v. United States, 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584 (1874)."

*       *       *       *       *       *

"Applying these principles to the evidence before the factfinder, we cannot construe, as clearly erroneous, its finding that the defendant 'intended to remain in the Commonwealth for an indefinite period of time.' *Because animo manendi is at best a subjective manifestation, Dinan's own declarations of intent are important, as were his explanations of the lack of compulsion in religious order assignments and his failure to obtain a Pennsylvania driver's license.*"

We also have further instruction on this subject in the case in Judge Hastie's opinion in Gallagher v. Philadelphia Transportation Company, 185 F.2d 543 (3d Cir. 1950) in which the lower court was criticized as putting too much emphasis on permanence of the attachment to a given state. We also quote at length from this decision.

"*The emphasis of the court on the permanence of the anticipated attach-ment to a state, in our opinion, required too much of the plaintiff.*

*       *       *       *       *       *

"It is enough to intend to make the new state one's home. Restatement, Conflict of Laws (1934) §§ 19, 20; Chicago & Northwestern Ry. Co. v. Ohle, 1885, 117 U.S. 123, 6 S.Ct. 632, 29 L.Ed. 837. It is not important if there is within contemplation a vague possibility of eventually going elsewhere, or even of returning whence one came. Goodrich, Handbook of the Conflict of Laws (3d ed. 1949) § 28; See Gilbert v. David, supra, 235 U.S. (561) at page 569, 35 S.Ct. (164) at page 166 (59 L.Ed. 360). If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile. Mid-Continent Pipe Line Co. v. Whitely, 10 Cir. 1940, 116 F.2d 871. Finally, it is the intention at the time of arrival which is important. The fact that the plaintiff may later have acquired doubts about remaining in her new home or may have been called upon to leave it is not relevant, so long as the subsequent doubt or the circumstance of the leaving does not indicate that the intention to make the place the plaintiff's home never existed."

■ In the light of the foregoing and in view of the current tendency to treat students 18 years of age and above as emancipated and particularly in view of fact that in this case the plaintiff has rented an apartment in Rexburg and with due regard for Judge Goodrich's statement from his Handbook of the Conflict of Laws that the possibility of eventually going elsewhere or even returning whence one came does not defeat the acquisition of a new domicile, we conclude upon the *facts of this case* considering the student's connection with Idaho and her subjective intention of not returning to Pennsylvania in the foreseeable future that she is a citizen of Idaho for the purpose of diversity jurisdiction and the motion to dismiss must be denied.