In re David CROWE, Jr. and Stacy D'Lane Crowe, Debtors.

David CROWE, Jr. and Stacy D'Lane Crowe, Plaintiffs,

v.

SANDERS AUTO SUPPLY, Defendant.

Bankruptcy No. 593–50504–13.
Adv. No. 593–5085.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Nov. 10, 1993.

Tom R. King, Law Offices of Tom R. King, Lubbock, TX, for debtors.

Joe Heflin, Lubbock, TX, for Sanders Auto.

Robert B. Wilson, Chapter 13 Trustee, Lubbock, TX.

Bill Parkinson, Atty. Advisor, U.S. Trustee's Office, U.S. Dept. of Justice, Dallas, TX, U.S. Trustee.

**MEMORANDUM OF OPINION ON COMPLAINT TO COMPEL TURNOVER OF PROPERTY**

JOHN C. AKARD, Bankruptcy Judge.

On September 7, 1993, David Crowe, Jr. and wife, Stacy D'Lane Crowe (Debtors) filed for relief under Chapter 13 of the Bankruptcy Code. On October 22, 1993, the Debtors filed this adversary proceeding by complaint entitled Emergency Complaint to Compel Turnover of Property of the Estate in which they sought turnover of a 1985 Toyota pickup (Toyota pickup). The court finds that the Debtors have not offered adequate protection for the Defendant Sanders Auto Supply's (Sanders) possessory lien and thus, must deny turnover.[1]

---

**6.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014. This Memorandum will be published.

**1.** This court has jurisdiction of this matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and

Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(E).

## POSITIONS OF THE PARTIES

The Debtors asserted that the Toyota pickup is property of their Chapter 13 bankruptcy estate under § 541 of the Bankruptcy Code[2] and that it is necessary to a reorganization in this case. Under § 1306(b), they are entitled to remain in possession of all property of the estate. They asked to have the Toyota pickup turned over to them pursuant to § 542(a).

Sanders claimed a prepetition possessory mechanic's lien for repairs done to the Toyota pickup under TEX.PROP.CODE ANN. § 70.001 (Vernon 1984) which, in pertinent part, reads as follows:

### Section 70.001. Worker's Lien

(a) A worker in this state who by labor repairs an article, including a vehicle, motorboat, vessel, or outboard motor, may retain possession of the article until:

. . . .

(2) if no amount is specified by contract, the reasonable and usual compensation is paid.

Sanders asserted that under the Texas cases, if it relinquished possession of the Toyota pickup, it no longer had a lien and that the Debtors have not provided adequate protection for that lien.

## FACTS

Mr. Crowe testified that he purchased the Toyota pickup in July 1992 for $2,800.00. At that time, it had been driven in excess of 100,000 miles. FCS Credit Union of Floydada, Texas (Credit Union) financed the purchase. The Chapter 13 Trustee's records indicated that the balance due on that note is approximately $1,700.[3]

In June 1993, Mr. Crowe took the Toyota pickup to Sanders for repair. Sanders is engaged in the motor vehicle repair and mo-tor vehicle parts business. The charge ticket introduced into evidence indicated that Sanders completed the work on July 1, 1993 and charged $1,022.46 for parts and labor. The mileage on the Toyota pickup is listed at 175,984. Mr. Crowe towed the Toyota pickup to Sanders. The front bumper was severely damaged by the towing, but Sanders was not instructed to repair that damage. It did not have a battery at the time of delivery to Sanders and Mr. Crowe acknowledged that he will have to provide a battery in order to drive it away. In spite of numerous requests by Sanders, the Debtors were unable to pay the repair charges and, thus, did not retrieve the Toyota pickup.

The Debtors filed for relief under Chapter 13 on September 7, 1993. The Trustee's records indicated that, in addition to the Toyota pickup, they have a 1990 Honda Accord which is also mortgaged to the Credit Union. At the § 341 meeting of creditors held on October 13, 1993, the Debtors testified that they gave a 1980 Chevrolet pickup (Chevrolet pickup) to a third party as a high school graduation present in late Spring, 1993. Because the Toyota pickup was being repaired, Mr. Crowe continued to drive the Chevrolet pickup. The Trustee instructed Mr. Crowe to have title to the Chevrolet pickup returned to the Debtors as part of the bankruptcy estate. Mr. Crowe testified that he was in the process of doing so.

Mr. Crowe testified that Mrs. Crowe drives the Honda Accord to work and that it is necessary for her to have it for that purpose. Mr. Crowe is in the home repair business and presently uses the Chevrolet pickup in that business. He is concerned that the Chevrolet pickup will not be adequate for his purposes. He stated that the heater did not work, that there was no window on the driver's side of the vehicle, that the lights do not work, and that he had been advised that the clutch would soon fail.

---

**2.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

**3.** The Credit Union is not a party to this adversary proceeding. Its security documents were not introduced into evidence. Consequently, this memorandum constitutes no finding by the court as to the extent or validity of the Credit Union's liens.

Mr. Crowe stated that he had full coverage insurance on the Toyota pickup. He testified the pickup has a value approximately equal to the amount owed the Credit Union. The Trustee's investigation indicated that 1985 Toyota pickups have a wholesale value between $800 and $1,025, and a retail value between $1,825 and $2,825, depending upon condition.

The Debtors do not contest the amount due Sanders. The testimony indicated that Mr. Sanders paid the mechanic for the work done at the time it was done, and that he paid for the parts prior to their being put into the Toyota pickup. His bill included a markup on both of those items, but the court understands that to be standard practice in the automobile repair business.

The initial Chapter 13 plan filed by the Debtors treated Sanders as unsecured. Their second plan called for adequate protection payments of $21.45 per month beginning at the end of October, 1993 and continuing until confirmation. Thereafter, the debt would be paid in five monthly installments of $209.64. The Debtors made their first scheduled payment to the Chapter 13 Trustee in the amount of $481.00. The last day for creditors to file claims in this case is January 11, 1994. The Trustee anticipated that the case will be presented for confirmation in March or April 1994.[4] The Debtors' attorney indicated that if it was determined that Sanders did not have a lien, another plan providing for different treatment of Sanders would be filed. At this hearing, the Debtors did not offer any evidence to indicate that Sanders' lien was invalid.

## DISCUSSION

■■■ In this case, the court must consider the delicate balance between Mr. Crowe's

need for the Toyota pickup and the need to preserve Sanders' lien on the pickup. Neither party cited, nor has the court located, any cases dealing with Texas Property Code § 70.001 in a bankruptcy context.

Both parties asserted that Sanders' lien is superior to that of the Credit Union. The Credit Union is not a party to this adversary proceeding and, consequently, the court cannot make a determination as to the priority of liens.[5] However, for the purposes of this memorandum, the court will assume that the parties' representations are correct.

The Debtors pointed out that prepetition liens remain on the assets in a bankruptcy proceeding. In most instances this is true, and no difficulties are presented where the lien is recorded in some official record or registered on a title certificate as is the situation with the Credit Union's lien in this case. On the other hand, Sanders' lien is a possessory lien, which is lost when Sanders no longer holds the vehicle. *Thompson v. Apollo Paint & Body Shop,* 768 S.W.2d 373 Tex.App.—Houston [14th Dist.] 1989, writ denied). The Debtors have not suggested any means by which that lien could be continued if the court ordered turnover of the Toyota pickup.

The Debtors' current plan provides that the first significant payments to Sanders be made in April or May, 1994. What would happen if illness, lack of work, or other reasons made the Debtors unable to make their Chapter 13 payments in the Spring of 1994 and the case is dismissed or converted to Chapter 7? Under those circumstances, if Sanders attempted to repossess and foreclose on the Toyota pickup it would be met with the argument that the Credit Union's lien was prior and exceeded the value of the vehicle.

Although the Debtors demonstrated need for the Toyota pickup, they did not demon-

---

**4.** It is the customary practice in this district to hold confirmation hearings after the claims bar date. This allows the Debtors' attorney, the Trustee and the creditors to fully analyze all of

the claims in preparing the final plan submitted for confirmation.

**5.** Since this opinion affects a vehicle upon which the Credit Union claims a lien, the court will

strate how Sanders' lien could be protected. For these reasons, the court must deny the requested relief.

JUDGMENT ACCORDINGLY.[6]

instruct the Clerk to send a copy of this opinion to the Credit Union.

6. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. This Memorandum will be published.