**In re James NORTHRUP, Debtor.**

**James NORTHRUP, Plaintiff,**

**v.**

**BEN THOMPSON ENTERPRISES, Defendant.**

**Bankruptcy No. 98–12709DAS.**

**Adversary No. 98–0131DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

April 29, 1998.

Michael A. Cataldo, Philadelphia, PA, Rand Spear, Glenside, PA, James Northrup, Downingtown, PA, for Debtor.

Patrick O'Donnell, West Chester, PA, for Defendant.

Florida Telco Federal Credit Union, Jacksonville, FL, Interested Party.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Resolution of the instant adversary proceeding ("the Proceeding") requires this

court to decide several issues regarding the nature and scope of the posessory lien of a motor vehicle repair person. We address and decide these issues as follows: (1) the repair person's lien is entitled to priority over purchase-money security interests; (2) a repair person has a lien for only repairs effected to property, not for storage of the property, especially when there is no contract to pay storage charges; and (3) the instant repair person is adequately protected by an assurance that the vehicle in which it has a lien is properly titled and insured, it retains its lien until full payment is received, and the Debtor remits an initial payment of $200 to BTE and provides for the payment of the balance of its valid secured claims in a confirmable Chapter 13 plan of reorganization.

## B. PROCEDURAL AND FACTUAL HISTORY

JAMES NORTHRUP ("the Debtor") filed the underlying individual Chapter 13 bankruptcy case on March 2, 1998. On the next day, March 3, 1998, he filed the instant Proceeding against BEN THOMPSON ENTERPRISES ("BTE"), an automobile repair shop recently sold to a large entity which owns several such shops. The Complaint was accompanied by the Debtor's "Emergency Hearing Motion for Turnover of Vehicle" ("the Motion"), alleging that he needed an order requiring BTE to immediately turn over his 1991 Acura Legend automobile ("the Auto") in which BTE claimed a lien to continue his employment; and offering BTE a lien, identification as a loss payee on his insurance policy, and payment in full through a prospective Chapter 13 plan as alleged adequate protection to its interests. BTE opposed the Motion at a hearing scheduled on March 12, 1998.

At that hearing it was established that, in April 1997, almost one year ago, the Debtor's back was seriously injured and the Auto, valued at $14,000 by the Debtor, was severely damaged when it was struck by another motorist while parked with the Debtor sitting in it. The Auto was taken to BTE, which finished the repairs on May 5, 1997, and billed the Debtor $5,041.63. The amount of this bill is not in dispute. The Debtor received two insurance checks, in the amounts of $2,809.18 and $2,232.45, to compensate him for these charges. While the Debtor paid over the proceeds of the $2,232.45 check to BTE, he unfortunately expended the other check on his living expenses, leaving a balance of $2,809.18 owed to BTE.

BTE refused to release the Auto, claiming a "common law lien," apparently as provided in 6 P.S. § 11, against the Auto. Although the Debtor made offers of a partial payment as large as $1,100 and promised to pay the balance in exchange for release of the lien, BTE demanded full payment as a condition for the Auto's release and the Debtor was unable to raise this sum.

On October 8, 1997, BTE sent a certified letter to the Debtor stating that, as of October 13, 1997, it would begin to charge him $30 per day storage for the Auto which would be added to his bill. BTE claimed that these charges were consistent with signs posted at its place of business. The Debtor testified that he did not observe any such signage and that no such charges were brought to his attention until he received the October 1997 letter. Placed into evidence was BTE's Payment Procedure and Repair Authorization form, executed by the Debtor on June 2, 1997, which provides, in pertinent part, as follows:

**PAYMENT:** Upon completion of repairs to your satisfaction, you will be expected to make payment in full for your repairs to include any supplement(s) or additional amounts....

...

...An express mechanic's lien is acknowledged on my vehicle to secure the amount of repairs....

BTE now claims, in addition to its $2,809.18 repair bill balance, a storage charge of $5,100, measured at $30 per day from October 13, 1997, through March 3, 1998.

The Debtor, a young man in his mid–20's who lives in Downingtown, Pennsylvania with his fianceé and their year-old son, came to Pennsylvania as a student in 1991 or 1992 with the Auto from his family home in Florida. The Auto is financed through a credit

union, identified as "Florida Telco," to which his mother belongs. He and his mother are both obligated on the purchase loan, the balance of which was estimated on the Debtor's Schedules as in excess of $15,000. The Auto is titled in Florida in the Debtor's name, and he has a Florida driver's license. The Auto is nevertheless allegedly validly insured in Pennsylvania, and $427 monthly payments to Florida Telco, shared by the Debtor and his mother, are allegedly current.

The Debtor's fianceé has a 1992 or 1993 Nissan Sentra automobile of her own which she uses to drive to her daily employment as a teacher. The Debtor, who is now re-employed after a six-month period of disability, can obtain public transportation to his employment as a social worker in the Philadelphia Public Defender's office, but claimed that he needed the Auto to make evening calls in connection with a second job as a mental health therapist. He further stated that his fianceé's vehicle is not always available to him for this purpose. As of the date of the March 12, 1998, hearing, no Chapter 13 plan had been filed, but the Debtor contemplated liquidating the repair bill of $2,809.18 by making trustee payments for over 60 months to do so.

At the close of the hearing we indicated our reluctance to rule on a Motion until the amount of BTE's secured claim was ascertained. Specifically, we were uncertain regarding the priority of the liens of BTE and Florida Telco, which could possibly have eliminated or reduced the secured portion of BTE's claim against the Debtor, and, in addition, whether BTE's lien extended to its claim for storage charges. We also found that, having subsisted without the Auto for almost a year and not having proven an immediate and critical personal need for the Auto, the Debtor had not established that he would be irreparably harmed if the Auto were not immediately returned to him. Therefore, we ordered the Debtor to promptly amend his Complaint to raise the issue of

the amount of BTE's secured claim by March 20, 1998; BTE to answer the amended complaint by April 3, 1998; and scheduled the final trial of the Proceeding on all of these issues on April 15, 1998.

 The parties complied with these directives. At the April 15 trial they agreed that BTE appeared to have a lien priority over Florida Telco. The Debtor testified that he did not agree to pay the storage charges. A Chapter 13 plan contemplating payments of $80 monthly for 60 months, the proceeds of which would be devoted to liquidation of BTE's entire secured claims, believed to be the only priority or secured claim which would be funded under the plan, was introduced. The Debtor did indicate an ability to pay as much as $400 monthly. He further testified that he had hired Rand Spear, Esquire, as counsel to pursue his personal injury claim arising out of his April 1997 vehicular accident.[1]

William Manzi, the co-owner of BTE, defended BTE's storage charges of $30/day in the face of our skepticism of the reasonableness of such charges, claiming that these charges were conspicuously posted and that all other customers have always paid this rate without dispute. He did concede, however, that most payees were insurers and that the charges were typically short-term.

Neither party indicated any desire to submit post-trial briefs. We note that a confirmation hearing has now been scheduled in this case on August 11, 1998.

## C. DISCUSSION

1. *BTE Has a Valid Statutory Possessory Lien, Which the Debtor Must Consider as Prior to Florida Telco's Purchase–Money Security Interest in Proposing a Plan Providing for Adequate Protection of BTE's Secured Claim.*

 Although, intuitively, it would seem that disputes between which owners and re-

---

1. Attorney Spear is forwarded a copy of this Opinion and advised that Edward Sparkman, Esquire, the Standing Chapter 13 Trustee, should be named as a plaintiff in any tort action commenced on the Debtor's behalf by him. *See* 11 U.S.C. § 323; *Richardson v. United Parcel Service,* 195 B.R. 737 (E.D.Mo.1996); *In re Bryer,*

216 B.R. 755, 759 (Bankr.E.D.Pa.1998); and *Krank v. Utica Mutual Ins. Co.,* 109 B.R. 668 (E.D.Pa.), *aff'd,* 908 F.2d 962 (3d Cir.1990). Also, Attorney Spear may have to be appointed as special counsel by the Trustee to obtain compensation for his efforts.

pair persons similar to that at issue would be sufficiently common to have permitted the development of a body of coherent modern case law, in fact we found that a dearth of authority, much of which is in conflict or vague in its expression, addressing the issues relevant to the instant dispute. It therefore serves a useful purpose to establish several basic principles in this surprisingly arcane area of the law.

The Pennsylvania law which gives rise to a repair person's lien is 6 P.S. § 11, enacted in 1925, which provides as follows:

### § 11. Procedure for sale of personal property under common law lien

Hereafter where any person, corporation, firm, or copartnership may have what is known as a "common law lien" for work done or material furnished about the repair of any personal property belonging to another person, corporation, firm, or copartnership, it shall be lawful for such person, corporation, firm, or copartnership having said common law lien, while such property is in the hands of the said person, corporation, firm, or copartnership contriving such work and material, to give notice in writing to the owner of the amounts of indebtedness for which said common law lien is claimed for the labor and material that has entered into the repair, alteration, improvement, or otherwise, done upon the said property. If the said claim for said work or material is not paid within thirty days the said person, corporation, firm, or copartnership to which said money is due, may proceed to sell the said property, as hereinafter provided. Provided, however, that the owner of said property, if he disputes said bill, may issue a writ of replevin, as provided by law, within the said thirty days, and the said dispute shall be settled in said action of replevin.

A repair person's possessory lien is therefore a statutory lien, as opposed to a judicial or consensual lien, and in that sense may be more difficult to attack than a consensual purchase-money security interest. *See* 11 U.S.C. § 545; and *In re Scott,* 88 B.R. 196 (Bankr.W.D.Ark.1988). The constitutionality of the provisions of 6 P.S. § 11, insofar as

they provide for the repair person's possessory lien on the property repaired, have been upheld, although the summary sale provisions of this statute and the statutes following it at 6 P.S. §§ 12, 13, have been declared unconstitutional as violative of due process of law. *See Parks v. "Mr. Ford,"* 556 F.2d 132, 134–43 (3d Cir.1977) (en banc).

We also note, in light of the reference on BTE's form to its alleged "mechanic's lien," the repair person's lien is *not* to be confused with a mechanic's lien, which fixes on real estate and arises from repairs or improvement to that real estate. *Compare* 49 P.S. § 1101, *et seq.; In re Yobe Electric Inc.,* 30 B.R. 114, 118 (Bankr.W.D.Pa.1983), *aff'd,* 728 F.2d 207 (3d Cir.1984); and *In re Jones,* 1996 WL 79371 (Bankr.E.D.Pa. Feb. 21, 1996).

The law regarding the priority between a creditor having a purchase money or other security interest in an item subject to repair, typically a motor vehicle, relative to the repair person of that vehicle, has been an area of significant dispute. In *In re Radwin Transfer of Pa., Inc.,* 19 B.R. 6, 8–9 (Bankr. E.D.Pa.1982), our predecessor, Chief Judge Goldhaber, citing *Associates Financial Services Co. v. O'Dell,* 491 Pa. 1, 4–5, 417 A.2d 604, 605–07 (1980), held that a secured party who had not consented to the repairmen's taking possession of the vehicle retained a priority over a repair person.

However, these decisions did not take account of 13 Pa.C.S. § 9310, enacted in 1980, which provides as follows:

### § 9310. Priority of certain liens arising by operation of law

When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given a statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

Recent Pennsylvania cases have observed that *O'Dell* was decided under common law principles, and that § 9310 dictates a differ-

ent priority. *See Williamsport Nat'l Bank v. Shrey*, 417 Pa.Super. 563, 566–68, 612 A.2d 1081, 1083–84 (1992); *Pittsburgh Nat'l Band v. Schmidt*, 4 Pa. D. & C.3d 143, 147–48 (Fayette Co. C.P.1985); and *Chrysler Credit Corp. v. Iguestas*, 21 Pa. D. & C.4th 359, 361–62 (Monroe Co. C.P.1993). *But see American Bank & Trust Co. v. R.G. Rutherford Contractors*, 34 Pa. D. & C.3d 176, 178–79, 1984 WL 178903 (Buck Co. C.P.1984) (§ 9310 applies only when the repair person obtains the prior consent of the security holder to make repairs in light of *O'Dell* ).

Because *O'Dell* was decided subsequent to the enactment of § 9310, we, like the *Rutherford Contractors* court, share some degree of uncertainty as to the issue of the priority between Florida Telco and BTE. We also note that Florida Telco is not a party to the Proceeding, and it would therefore be inappropriate to finally adjudicate and bind it to our instant determination of its rights in the Auto vis-à-vis BTE. However, the appellate decision in *Shrey* and the other cases cited, plus the clear language of § 9310, certainly appear to support the priority of BTE's lien. We also note that, for purposes of the Proceeding, the Debtor has conceded the priority of BTE's lien, thereby eschewing his initial suggestion that perhaps the prior Florida Telco lien would wipe out any secured portion of BTE's lien under 11 U.S.C. § 506(a). Therefore, for purposes of this Proceeding, and with an express reservation of Florida Telco's rights to claim to the contrary, we hold that BTE is considered, for purposes of measuring its secured claim vis-à-vis the Debtor, to have a first-priority security interest against the Auto for its repair bill. Since that sum is not contested, this lien is indisputably valid to the extent of at least the repair bill of $2,809.18 in issue. *Compare In re Riley*, 1989 WL 5856 (Bankr.E.D.Pa. Jan. 26, 1989) (no lien attaches for an illegal claim for a repair bill).

2. *BTE's Secured Claim Does Not Extend to Its Storage Charges, and Hence the Undisputed Repair Charge Can Be Enhanced Only by Pre–Judgment Statutory Interest.*

■ One of the primary disputed issues between the parties is whether BTE's statu-tory lien can be extended to include its $5,100 claim for storage charges. We hold that it cannot, for two reasons.

The first reason is that we find the absence of any contract between the Debtor and BTE for the imposition of any storage charges, let alone charges of $30 per day, a sum which approaches or exceeds the reasonable *rental value* of the Auto. As we stated in *In re Pennsylvania Footwear Corp.*, 204 B.R. 165, 175 (Bankr.E.D.Pa.1997),

[t]here are three requisites which must be met before a court can find an existing contractual obligation. First, there must be a meeting of the minds and an intent of all parties thereto to enter into a contract. *See Irma Hosiery Co. v. Home Indemnity Co.*, 276 F.2d 212, 214 (3rd Cir.1960). Second, there must be a communicated offer and acceptance and an unconditional acceptance by the parties to the terms contained in the offer. *See Fahringer v. Strine's Estate*, 420 Pa. 48, 53, 216 A.2d 82, 85 (1966). Third, there must be valid consideration given by both parties, either by an act or forbearance or a return promise which is bargained for and given in exchange for that promise. *See Thomas v. R.J. Reynolds Tobacco Co.*, 350 Pa. 262, 266, 38 A.2d 61, 63 (1944).

■ The first two prerequisites are clearly not met. There is no evidence that the Debtor agreed, at any time, to pay storage charges to BTE. If it could be argued that the signs at BTE communicated an offer to charge same, we hold that the Debtor's mere presence in the office where these signs were posted in no sense constituted an "unconditional acceptance" of same.

We also note that the Repair Authorization form, quoted at page 857 *supra*, though prepared by BTE, purports to allow a "mechanic's lien" to secure only "the amount of repairs." To the extent that there is any ambiguity in whether "repairs" should include "storage," and we would suggest that the exclusion of storage charges therefrom is unambiguous, and that, even if this language could be deemed ambiguous, the language of the form must be construed against BTE as its draftsperson. *See In re Brown*, 219 B.R.

373, 376 (Bankr.E.D.Pa.1998); *In re Orsa Associates, Inc.,* 106 B.R. 418, 425 (Bankr. E.D.Pa.1989); and *In re United Nesco Container Corp.,* 68 B.R. 970, 973–75 (Bankr. E.D.Pa.1987).

Finally, we question whether consideration for any such contract to pay for storage existed. It appears that the Debtor contracted to pay BTE for a repair bill only, not a premium in the event that payment was delayed. The Debtor never requested that BTE store the Auto. To the contrary, he has consistently requested that the Auto be returned to him. To the extent that hardship has resulted to either party as a result of BTE's exercise of its repair person's lien by retaining possession of the Auto, it appears that more hardship has accrued to the Debtor from loss of use of the Auto than to BTE to make slight accommodations to protect the Auto.

■ Furthermore, even if BTE had a valid contractual basis for its claim of a lien for storage of the Auto, we find that there is no statutory basis to support the validity of such a lien. As Judge Goldhaber of this court held in *In re Herman Hassinger, Inc.,* 41 B.R. 787, 790 (Bankr.E.D.Pa.1984), citing again to *O'Dell, supra,* 491 Pa. at 6, 417 A.2d at 604, promissory liens are "not greatly favored in the law" and are "valid only to the extent that one has added value to another's chattel through his labor, skill or materials." It is difficult to see how the storage of the Auto could be said to have enhanced the Auto's value, and clearly did not do so to the extent that the repair of the Auto did.

Moreover, in *Welded Tube Co. of America v. Phoenix Steel Corp.,* 512 F.2d 342, 345 (1975), it is held that

[i]n Pennsylvania the right to a lien for storage is not extended to an artisan in the absence of contractual entitlement but is limited to warehousemen and those in the business of storage. *Mitchell v. Standard Repair Co., supra,* [275 Pa. 328, 119 A. 410 (1923) ]. *See also Restatement of Security* § 64, comment d (1941). Hence, *Welded* was not entitled to a lien for storage. . . .

This observation is supported by a close reading of 6 P.S. § 11, which creates a lien only for "work done or material furnished about the repair" of a vehicle, and thereafter provides that a lien exists only as to "labor and material that has entered into the repair, alteration, improvement,. . .done upon the said property." These terms would not appear to include storage charges.

Finally, we note the exhaustive analysis of common law and statutory Pennsylvania promissory liens by Judge Higginbotham in *Younger v. Plunkett,* 395 F.Supp. 702, 707–15 (E.D.Pa.1975). *Younger* holds that a promissory lien cannot arise except from the express consent of the owner, *id.* at 707–11, and that no statutory basis for such liens arises from Article 7 of the Uniform Commercial Code (relating to warehousemen) or from 6 P.S. §§ 15–17. *See also Riley, supra,* 1989 WL 5856, at *1.

■ We therefore hold that BTE has no valid secured lien for its storage costs. Nevertheless, we do hold that BTE's valid secured claim for repairs must be enhanced by pre-petition, pre-judgment interest, since the claim for repairs has been undisputed and hence has been for a fixed amount from May 7, 1997, through the date of the bankruptcy filing on March 2, 1998, when accrual of interest ceased. *See In re Sacred Heart Hospital of Norristown,* 200 B.R. 114, 119 (Bankr.E.D.Pa.1996); and *In re Art Shirt, Ltd.,* 68 B.R. 316, 325 (Bankr.E.D.Pa.1986), *aff'd,* 93 B.R. 333 (E.D.Pa.1988). Utilizing the Pennsylvania statutory rate of six (6%) percent in measuring such interest over a ten-month period results in added interest of $140.46, raising BTE's valid secured claim to $2,949.64.

■ We will round off this discussion by fixing BTE's unsecured claim for storage charges at $510.00. We expressly decline BTE's claim that $30 per day is a reasonable storage charge rate. There is, as indicated at pages 860–61 *supra,* no contract for the Debtor to pay storage to BTE at any rate. Furthermore, we find the rate charged, assuming *arguendo* it were pursuant to a valid contract, is unconscionable and for that reason unenforceable. *See Brown, supra,* 219 B.R. at 383; *Witmer v. Exxon Corp.,* 495 Pa. 540, 551–52, 434 A.2d 1222, 1228 (1981); and *Germantown Manufacturing Co. v. Rawlin-*

*son,* 341 Pa.Super. 42, 55–60, 491 A.2d 138, 145–48 (1985). We will allow a *quantum meruit* claim measured at $3.00 per day, or $510.00. In setting what might seem a low rate, we note that BTE will already be compensated for the delay in the Debtor's payment of the repair bill balance by the award of pre-petition interest and is also entitled to the addition of deferral interest to the $2,449.64 balance of its secured claim payable in the Plan, from the date of the bankruptcy filing through the date that the secured portion of BTE's claim is liquidated under the Debtor's plan. *See* 11 U.S.C. § 1325(a)(5)(B)(ii); *In re Johnson,* 140 B.R. 850, 855 (Bankr.E.D.Pa.1992); and *In re Klein,* 106 B.R. 396, 402 (Bankr.E.D.Pa. 1989). Further enhancement of BTE's claim does not appear to be justified.

3. *The Debtor Is Entitled to Possession of the Auto upon Providing Adequate Protection to BTE's Security Interest, Which We Determine Can Be Accomplished Only by the Debtor's Properly Obtaining a Pennsylvania Driver's License, Allowing BTE to Retain Its Lien, Immediately Paying $200 to BTE Towards Its Bill, and Filing a Plan Which Will Liquidate the Balance of BTE's Valid Secured Claim.*

Having resolved the issue of the amount of BTE's valid secured claim, we must determine what provisions of protection of BTE's security interest are adequate to protect that interest in the event of the turnover of the Auto to the Debtor. *See generally United States v. Whiting Pools, Inc.,* 462 U.S. 198, 209–12, 103 S.Ct. 2309, 2315–17, 76 L.Ed.2d 515 (1983); and *In re Choice,* 1997 WL 599577, at *2–*4 (Bankr.E.D.Pa. Sept. 23, 1997). *See also Pileckas v. Marcucio,* 156 B.R. 721, 725 (N.D.N.Y.1993) (only a secured claim must be adequately protected).

There are not very many cases which address the turnover/adequate protection issue in the context of a repair person's lien. We could only locate *In re Deiss,* 166 B.R. 92 (Bankr.S.D.Tex.1994); *In re Crowe,* 160 B.R. 299 (Bankr.N.D.Tex.1993); and *In re Cox,* 133 B.R. 198 (Bankr.N.D.Ohio 1991). *Deiss* and *Crowe* appear to require payment of the entire secured claim at issue as a condition for return of a vehicle. Application of such a rule of law, if applied here, could effectively freeze the possession of the Auto in the hands of BTE for several years, which would defeat the very purpose of Chapter 13 of allowing debtors to retain or reserve property by making periodic payments to creditors. *Cox,* more in the spirit of Chapter 13, allows the return of the vehicle at issue, but only after applying Ohio law to reduce the repair persons's secured claim to a secured status junior to the purchase-money lender's security interest, 133 B.R. at 200, as well as upon the further requirement that the vehicle be insured. *Id.* at 201.

Other courts, considering adequate protection requirements in comparable settings, have also been less demanding than the *Deiss* and *Crowe* courts. *See In re Attinello,* 38 B.R. 609, 612–13 (Bankr.E.D.Pa.1984) (repossessed truck cab turned over because equity cushion was found to produce adequate protection to creditor). The debtor's providing that a vehicle turned over is adequately insured is almost uniformly required. *See, e.g., In re Matthews,* 118 B.R. 398, 399 (Bankr.D.S.C.1989); and *In re Loof,* 41 B.R. 855, 856 (Bankr.E.D.Pa.1984). If the title to a vehicle is not properly titled in the name of the Debtor, a turnover on the basis of the Debtor's performance will be denied. *See In re Washington,* 137 B.R. 748 (Bankr. E.D.Ark.1992). In certain circumstances, an initial significant "down payment" will be required before the secured property is turned over. *See In re Najafi,* 154 B.R. 185, 195 (Bankr.E.D.Pa.1993) (college transcript ordered turned over to debtor upon his payment of $300 of a nondischargeable $750 education loan debt).

In the instant factual setting, we have decided to require a combination of different sorts of performances on the part of the Debtor, most of which are referenced in the above cases, in coming to our decision as to what will constitute adequate protection of BTE's security interest by the Debtor which is sufficient to justify the turnover of the Auto to him.

The first requirement is that the Auto be properly titled and adequately insured. The

Debtor's filing of his bankruptcy case in this venue plus his testimony that, while he originally came to Pennsylvania to attend college, he has remained in this state after his graduation and settled with a fiancée who apparently has ties to this state. These facts establish that the Debtor is presently a resident of Pennsylvania. *Cf. Gordon v. Steele*, 376 F.Supp. 575, 577–78 (E.D.Pa.1974). As a result, he is obliged to obtain a Pennsylvania driver's license. *See* 75 Pa.C.S. §§ 1501(a), 1502(3); and *Commonwealth v. Claar*, 152 Pa.Cmwlth. 153, 157, 618 A.2d 1140, 1142 (1992).

Furthermore, the Debtor is no longer a nonresident owner of the Auto, and must therefore obtain registration of the Auto in Pennsylvania as well. 75 Pa.C.S. §§ 1301(a), 1302(*l*), 1303(a). Despite his recovery of insurance proceeds in connection with his accident in April 1997, which is indicative of valid insurance despite his apparently faulty licensure and registration, we think that a continuing failure to procure proper licensure and registration will jeopardize valid insurance coverage of the Auto at some point in the future. We therefore will require that the Debtor properly register the Auto in Pennsylvania, obtain a Pennsylvania driver's license, and provide evidence that he has done so and has the Auto adequately insured as conditions for its turnover.

We will also require that the Debtor advance at least $200 to BTE and file and serve a plan which will liquidate BTE's valid secured claim as further indicia of adequate protection. Finally, we will order that BTE shall retain its lien in the Auto until its entire secured claim is liquidated. *See Parks, supra*, 556 F.2d at 135 (a repair person's lien is not extinguished when the repair person surrenders possession in compliance with a court order).

We perceive this order to be immediately enforceable and self-executing, *i.e.*, BTE is directed to turn over the Auto to the Debtor as soon as all of the foregoing conditions are satisfied. We recognize the potential that a dispute could arise as to whether the Debtor has proposed a confirmable plan at any time prior to the confirmation hearing, which is not initially scheduled until August 11, 1998.

It is not our intention, however, to require the Debtor to wait until August 11, 1998, to recover the Auto. There is also the potential that the condition of transferring the title of the Auto to Pennsylvania is contrary to terms of the Debtor's contract with Florida Telco, and that Florida Telco will decline to waive any such conditions. If problems of the nature recited here, or any other unforeseen problems, arise, some court involvement prior to the turnover of the Auto may be necessary. However, we reiterate that it was our intention to render the terms self-executing, and we encourage all interested parties to proceed in that light.

## D. CONCLUSION

A order effecting the results reached in this Opinion will entered.

### ORDER

AND NOW, this 29th day of April, 1998, after a trial of the above proceeding on April 15, 1998, incorporating an earlier hearing of March 12, 1998, on the Debtor's Emergency Hearing Motion for Turnover of Vehicle, it is hereby ORDERED AND DECREED as follows:

1. The claim of BEN THOMPSON ENTERPRISES ("BTE") is fixed at a claim in the amount of $2,949.64 which is secured by the 1991 Acura Legend automobile ("the Auto") titled to JAMES NORTHRUP ("the Debtor"), and an unsecured claim of $510.00.

2. BTE is directed to turn over the Auto to the Debtor forthwith upon the Debtor's submission of evidence to BTE, copy to the Standing Chapter 13 Trustee and the court in chambers, that the Debtor has met the following conditions:

 a. The Auto is titled and adequately insured in Pennsylvania.

 b. The Auto is adequately insured under a policy naming BTE as a loss payee.

 c. He becomes a validly licensed Pennsylvania driver.

 d. He makes payment to BTE of not less than $200 in certified funds or cash.

e. He files and appropriately serves a confirmation plan which pays BTE the balance of its secured claim of $2,749.64; allows BTE to retain a repair person's lien on the Auto until the Debtor obtains a discharge; and adequately protects the interests of the other creditor with a valid security interest in the Auto, believed to be Florida Telco Federal Credit Union.