**In re Linda Ruth THOMPSON, Debtor.**

No. 7–98–01739–WSA–13.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

June 16, 2004.

Thomas C. Antenucci, Abingdon, VA, for Debtor.

## MEMORANDUM DECISION

WILLIAM F. STONE, JR., Bankruptcy Judge.

The matter before the Court is the Debtor's Motion to reopen her Chapter 13 bankruptcy case for the purpose of administering for her creditors a litigation claim which she is pursuing in the United Sates District Court for the District of Columbia, a claim which she and two others filed in the District Court for the District of this Court. This Motion is opposed by Indian Path Hospital, Inc., one of the defendants to the litigation claim as well as one of her bankruptcy case creditors. For reasons particular to a Chapter 13 case in which a Plan has been confirmed, has been successfully completed, a discharge granted, and then closed, the Motion to reopen will be denied.

## FINDINGS OF FACT

The Court makes the following findings of fact in this case:

1. This Chapter 13 case was commenced by the Debtor's filing of a Chapter 13 petition in this Court on May 4, 1998.

2. Not quite a year earlier in June of 1997, the Debtor and two other medical doctors had filed a "qui tam" action under seal in the United States District Court for the Western District of Virginia against Indian Path Hospital, Inc., among others.

3. On August 11, 1997 the Honorable Glen M. Williams, Senior United States District Court Judge for the Western District of Virginia entered an order providing that "[u]nder no circumstances shall the names of the parties or the existence of this action be publicly disclosed or otherwise disclosed to Defendant, in any manner, while this Order remains in effect."

4. The Schedules and Statement of Financial Affairs filed in this case make no reference to the "qui tam" action, either at item No. 20 of Schedule B, which requires an itemization of "other contingent and unliquidated claims of every nature", or in question No. 4a to the Statement of Financial Affairs, which requires a listing of "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case" and to which the Debtor answered "none". According to

testimony by the Debtor and representations of her counsel at the hearing on the Debtor's Motion to reopen this case, she did advise bankruptcy counsel of the existence of the "qui tam" action and counsel advised her on the basis of the District Court's August 11, 1997 order not to make any disclosure of such action in her bankruptcy filings. Neither the Debtor nor her counsel sought specific guidance from the District Court as to how to deal with the "qui tam" action in her bankruptcy case. Indian Path Hospital, Inc. is one of the Debtor's creditors in this case.

5. The Debtor on May 27, 1998 proposed and on September 17, 1998 obtained confirmation of a Chapter 13 Plan which provided for payments of $2,550 per month for 48 months with a projected distribution to her general unsecured creditors of 27% of the amount of their claims. Neither the Plan nor the Order confirming it made any express provision concerning vesting of property of the bankruptcy estate.

6. On May 28, 1999 the Honorable James P. Jones, Judge of the District Court, entered an order lifting the seal of the "qui tam" action "for the sole purpose of providing copies of the Complaint in this matter to parties to a proceeding before the Judicial Panel on Multidistrict Litigation" and further expressly ordering that "[f]urther disclosure is prohibited." At some point prior to the conclusion of the bankruptcy case, the "qui tam" action was unsealed and the Complaint was served upon the defendants but the Debtor did not amend her bankruptcy pleadings. However, her counsel in the bankruptcy case was not the same as her counsel in the "qui tam" action and there is no evidence before the Court to indicate when, if ever, the Debtor personally became aware of the "unsealing", or that she should or could amend her filings, or that her bankruptcy counsel were aware of such "unsealing" prior to the completion of the case for which they were responsible.

7. On or about May 7, 2002 the Debtor successfully completed her confirmed Plan and on the following day received her Chapter 13 discharge. According to the Trustee's Final Report and Account, the Debtor paid a total of $122,400 into the Plan and her unsecured creditors who filed claims received a distribution of approximately 35% upon their claims, a total to them of approximately $49,230. Indian Path Hospital, Inc. received a distribution of $28,908.43, by far the largest distribution to any unsecured creditor.

8. On July 17, 2002 the bankruptcy case was closed.

9. In its dual capacity as both Chapter 13 bankruptcy case creditor and "qui tam" action defendant, Indian Path Hospital, Inc. had actual notice of both such facts prior to the completion of the bankruptcy case and could have, but did not, file any pleading in this case to apprise the other parties in interest of the bankruptcy case of the existence of the "qui tam" action.

10. On or about April 22, 2004 attorneys for the defendants in the "qui tam" action filed a Motion For Summary Judgment seeking the dismissal of the Debtor's claims on the ground that her failure to disclose them in her bankruptcy case judicially estopped her from prosecuting them afterwards.

11. On May 10, 2004 the Debtor filed the present Motion To Reopen Case seeking to reopen her case so that her "qui tam" claim could be administered for the benefit of her creditors.

12. The Debtor testified at the hearing upon her Motion that she wanted her bankruptcy case creditors to be paid in full from any proceeds she might receive as a result of her "qui tam" action.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. This is as "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

The Bankruptcy Code expressly provides that a closed case may be reopened for the purpose of administering assets. 11 U.S.C. § 350(b) and Federal Rule of Bankruptcy Procedure 5010.

At this point it is unknown whether or not there will be any proceeds from the Debtor's "qui tam" claim. That will depend on the decision of District Judge Royce Lamberth before whom the Motion for Summary Judgment is now pending. It is not this Court's proper place to rule upon, either explicitly or implicitly, whether the events recited in the foregoing Findings of Fact should or should not result in any estoppel against the Debtor. Even if the Motion for Summary Judgment is denied, the likelihood, timing and possible extent of any recovery on the "qui tam" claim are entirely speculative at this point. Accordingly, there is no actual asset to be administered at this time and it is not only unknown, but also presently unknowable, whether the hoped-for asset will ever actually materialize.

Even if there were a judgment or settlement in existence, however, there is a significant difference between the situation presented in this case, a Chapter 13 case, and the more frequent one which arises in Chapter 7 cases. In the latter situation "unless the Court orders otherwise", an undisclosed asset of the Debtor, including a litigation claim, always remains property of the bankruptcy estate and never reverts to the Debtor at the end of the case as occurs with all unadministered but disclosed assets. 11 U.S.C. § 554(c) and (d). *See* 5 Collier on Bankruptcy § 554.03 at p. 554–13 (15th ed. rev.) While section 554 is generally applicable to proceedings under Chapters 7, 11, 12 and 13 of the Bankruptcy Code, 11 U.S.C. § 103(a), it is subject to the specific provision of 11 U.S.C. § 1327(b), which provides with respect to a confirmed Chapter 13 plan:

> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.[1]

In this case neither the Chapter 13 Plan nor the order confirming it provided "otherwise" with respect to property of the bankruptcy estate. Accordingly, the confirmation of the Chapter 13 Plan vested in the Debtor the property of the bankruptcy estate, including the "qui tam" claim. This conclusion was also reached by Bankruptcy Judge Benjamin Cohen of the Northern District of Alabama in the case of *In re Frausto,* 259 B.R. 201, 217 (Bankr. N.D.Ala.2000) ("The fact that Mr. Frausto did not disclose the existence of his pre-petition cause of action does not change the conclusion that the proceeds of that cause of action are not property of the estate and are unavailable to pre-petition creditors. No provision of the Bankruptcy Code provides for the negation of the effect of section 1327 as to property owned by a debtor but not disclosed.") If the Debtor had filed a Chapter 7 petition, control of the "qui tam" claim would have passed to the Chapter 7 Trustee and, because the claim was undisclosed, would not have been "abandoned" to her at the conclusion of the case.

---

**1.** *See generally In re Reynard,* 250 B.R. 241, 246 (Bankr.E.D.Va.2000); *In re Leavell,* 190 B.R. 536, 539 (Bankr.E.D.Va.1995).

Furthermore, the time period of a Chapter 13 case is limited while that of a Chapter 7 is not. The normal length of a Chapter 13 case, as contemplated in the Bankruptcy Code, is a period of three years, although the Court "for cause" may approve a period up to "five years". 11 U.S.C. § 1322(d). A Chapter 13 Plan can be modified even after its confirmation, but the Code expressly prohibits any modification which would provide "for payments over a period ... that expires after five years after [the time that the first payment under the original confirmed plan was due]". 11 U.S.C. § 1329(c). As pertinent to this case, the Chapter 13 Plan was originally confirmed on September 17, 1998. Pursuant to 11 U.S.C. § 1326(a), the Debtor was obliged to "commence making the payments proposed by a plan within 30 days after the plan is filed." The Debtor's Chapter 13 Plan was filed May 27, 1998. Accordingly, the first payment was due no later than June 26, 1998. As of the date of this Decision, we are just shy of *six* years after the date the first payment was due. The Court is without authority to modify the Debtor's Chapter 13 Plan to provide additional payments to creditors more than five years after June 26, 1998. Moreover, if a Chapter 13 Plan is to be modified, it must be done "before the completion of payments under such plan". 11 U.S.C. § 1329(a). It is obvious that even if the Debtor before completing her plan payments had amended her pleadings in this case after the "qui tam" file had been unsealed, there would have been no basis to modify the confirmed Plan at that time because no recovery in that action would have been in immediate prospect to support additional payments by Dr. Thompson for the benefit of her creditors. Even today, more than two years after the completion of her 48-month Chapter 13 Plan, it is unknown whether she will ever obtain any "qui tam" recovery and, if so, when that might occur.

The Court does not wish to suggest that failure to disclose relevant asset information in a Chapter 13 case is unimportant or without consequence. Such information is necessary to permit the Trustee, the creditors and the Court to determine whether a Chapter 13 Plan provides to the unsecured creditors at least as much as they would stand to receive in a Chapter 7 liquidation. 11 U.S.C. § 1325(a)(4). Without complete information, that judgment cannot be made with full confidence of its accuracy. When incomplete information is provided knowingly and without very good cause, grounds may exist for (i) revocation of the order of confirmation pursuant to 11 U.S.C. § 1330(a), (ii) criminal prosecution for filing false bankruptcy schedules which are signed under penalty of perjury, and/or (iii) judicial estoppel against prosecution of an undisclosed cause of action.[2] The situation presented here, however, is extremely unusual, perhaps even unique in reported opinions. One of the Debtor's "qui tam" defendants was also one of her bankruptcy creditors. She could not disclose her litigation claim without directly violating an order of the United States District Court. As "excuses" go, a pretty good one. While her counsel might arguably be faulted for not seeking specific guidance from the District Court as to how to reconcile that Court's order with the Debtor's bankruptcy obligations, there seems to be scant basis for charging either Dr. Thompson or her counsel with bad faith. Even more than most litigation claims, a "qui tam" claim by its very nature is not within the full control of the claimant and accordingly uncertain, to say the least, as to the nature and timing of its final resolution. It

---

**2.** *See De Leon v. Comcar Industries, Inc.,* 321    F.3d 1289 (11th Cir.2003).

appears unlikely, although certainly there is insufficient evidence before the Court to support a reliable factual finding, that even if the existence of the "qui tam" claim had been known to the creditors, the Chapter 13 Trustee or the Court, it would have had any effect upon the Court's confirmation decision.

The only court decision which the Court has found which is at all similar to the situation presented to this Court is that of *In re Tarrer*, 273 B.R. 724 (Bankr.N.D.Ga. 2001). That case allowed a Chapter 13 case to be reopened after the Debtor had successfully completed his confirmed plan and received a discharge for the purpose of administering an arbitration claim for the benefit of his creditors and avoiding a judicial estoppel defense raised against him. The decisions relied on by that Court to support its decision were ones relating to Chapter 7 cases. *See, e.g., Stackhouse v. Plumlee (In re Plumlee)*, 236 B.R. 606, 610 (E.D.Va.1999). For the reasons stated earlier in this Decision, this Court is persuaded that it ought not adopt the rationale of the *Tarrer* decision.

In summary, the Court will deny the Debtor's Motion to reopen, not because of issues relating to the Debtor's good faith or lack of same, but because it believes it has no authority to reopen her Chapter 13 case now to permit the relief which she seeks.[3] Furthermore, even if that were not its conclusion, to reopen her case to "administer" a litigation recovery which may never transpire is both speculative and premature. While the facts in this case seem to be considerably different than those presented in cases where a judicial estoppel has been applied as a result of a disclosure omission in a bankruptcy case, no reason appears why Judge Lamberth could not take the Debtor/Plain-

tiff at her word and provide that any recovery obtained by her in the "qui tam" case would be subject to an obligation to pay the remaining unpaid balance of her allowed unsecured bankruptcy claims. A copy of the Trustee's Final Report containing such information is annexed to this Decision.

An order in accord with this Decision will be entered contemporaneously herewith.

---

**3.** If the Motion concerned a Chapter 7 case, an entirely different case would be presented.

*See In re Dewberry,* 266 B.R. 916 (Bankr. S.D.Ga.2001).