In re Michael A. JACKSON and
Beverly E. Jackson,
Debtors.

Michael A. Jackson and Beverly
E. Jackson, Plaintiffs,

v.

George L. MARLETTE, Defendant.

Bankruptcy No. 02–12120–JNF.
Adversary No. 04–1136.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 30, 2004.

Isaac H. Peres, Boston, MA, for Plaintiffs.

Sara Discepolo, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Boston, MA, for Defendant.

### MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the Motion to Dismiss, and in the Alternative, Motion to Stay Proceedings filed by the Defendant George L. Marlette ("Marlette" or the "Defendant"). The Plaintiffs, Michael A. Jackson and Beverly E. Jackson (the "Debtors"), filed an Opposition, and the Court heard the Motion and Opposition on October 27, 2004. At the conclusion of the hearing, the Court directed the parties to submit supplemental memoranda by November 12, 2004.

The issues presented are whether the Debtors' complaint is ripe for determination and whether the Debtors have standing to prosecute a legal malpractice claim against Marlette arising out of his alleged failure to properly advise them to record a declaration of homestead under Mass. Gen. Laws ch. 188, § 1 prior to the commencement, on March 22, 2002, of their Chapter 7 case, which case they subsequently converted to a case under Chapter 13. The facts necessary to decide the issues raised by Marlette are not in material dispute.

### II. PROCEDURAL BACKGROUND AND UNCONTESTED FACTS

The Debtors filed a voluntary Chapter 7 petition on March 22, 2002. At the time, they were represented by Marlette. On Schedule A–Real Property, the Debtors listed an ownership interest in real property located at 231 Plymouth Street, East Bridgewater, Massachusetts (the "Property") with a current market value of $130,000 subject to a secured claim in the sum of $118,000. On Schedule C–Property Claimed as Exempt, the Debtors elected the federal exemptions and did not claim an exemption in the Property.

At the time the Debtors filed their Chapter 7 petition, they were plaintiffs in a lawsuit against a home improvement contractor which was and still is pending in the Plymouth Superior Court, Department of the Trial Court. This lawsuit was not listed on the Debtors' Schedule B–Personal Property, but was disclosed in their Statement of Financial Affairs as a "construction claim to secure completion of construction contract."

While the Debtors' Chapter 7 case was pending, the Chapter 7 Trustee determined that there would be assets available for distribution and, on or around November 15, 2002, requested a bar date for the filing of proofs of claim. At around the same time, the Debtors retained Attorney Richard Askenase as successor counsel. Additionally, they amended Schedule A to increase the current market value of the Property from $130,000 to $235,000, Schedule B to add their "[i]nterest as co-plaintiffs in state court litigation versus Russell Grabeau, Inc.,"[1] and Schedule C to add a claimed exemption in their Property in the sum of $34,850.

On December 31, 2002, the Debtors received a discharge. Seven months later, the Chapter 7 Trustee filed a Motion Pursuant to 11 U.S.C. § 542 for an Order Compelling Debtors to Turnover to Trustee Estate Property, namely the Property, because there was equity in excess of liens in the approximate amount of $132,000. In her Motion, the Trustee noted that the

---

1. The Debtors also indicated on Schedule B that the case was scheduled for trial in 2003 and that they believed that they could obtain a judgment in excess of $10,000, although they disclaimed any knowledge of the likelihood of collecting a judgment in that sum.

Debtors' successor counsel first represented that the Debtors would obtain a loan to acquire the estate's interest in the Property and, then, that the Debtors would attempt to sell the Property "under terms which would permit them to remain there and with an option to reacquire it." On August 14, 2003, the Debtors objected to the Trustee's Motion,[2] amended their Schedules and Statement of Financial Affairs for the second time, and filed a Motion to Convert Case to Chapter 13 along with a Chapter 13 Plan. In their Amended Schedule A, the Debtors increased the value of the Property from $235,000 to $278,000. In their Amended Schedule B, they estimated the amount of the claim against Russell Grabeau, Inc. at $50,000 and listed a "[c]laim for malpractice against Attorney George Marlette," adding that the claim would be pursued in the Chapter 13 case, that they believed that their damages were in excess of $50,000, and that "[t]echnically, this claim arose after the filing of the chapter 7 case."[3] The Court granted the Debtors' Motion to Convert on August 20, 2003. The Debtors then filed an identical Chapter 13 plan on September 8, 2003. In the Liquidation Analysis section of their plan, they stated that the total amount available to satisfy the claims of creditors in a Chapter 7 would be $127,900, and they noted the following:

The value of the litigation against Russell Grabeau is undetermined and no exemption is claimed for any potential recovery. Debtor [sic] shall devote all of the proceeds received from any judgment, less any approved attorneys [sic] fees to Melvyn Cohen, to Chapter 13 trustee.

The value of the litigation against George Marlette is estimated at $50,000. Debtor [sic] shall devote all of the proceeds received from any judgment, less any approved attorneys [sic] fees to Chapter 13 trustee.

On December 15, 2003, the Debtors filed a Motion to Employ Isaac Peres as Special Counsel "for the purpose of representing debtors in litigation against Attorney George Marlette for legal malpractice." On January 6, 2004, the Court, in the absence of objections, granted the Motion. The same day, the Court confirmed the Debtor's Chapter 13 plan.

On April 8, 2004, the Debtor filed a Post Confirmation First Amended Chapter 13 Plan in which they set forth the administrative claim of the Chapter 7 Trustee and her counsel at $7,241.41 and increased the amount of unsecured claims to be paid through the plan from $11,127.74 to $36,958.11. They added a provision that, in addition to the monthly payments of $700, there would be a balloon payment in the amount of $42,515.78 upon receipt of a settlement or judgment of the malpractice

2. In their Objection, the Debtors disclosed that they intended to convert their Chapter 7 case to a case under Chapter 13. Additionally, they disclosed that they had obtained the Property from Beverly Jackson's father, Edward Whitmarsh, that in March of 1998 they obtained a mortgage on the Property in the sum of $123,000, that in conjunction with the mortgage financing they were required as a condition of the loan to set aside money to bring the septic system into compliance with state regulations, and that they employed Russell Grabeau, Inc. to repair the septic system

and to add an in-law apartment for Edward Witmarsh. The Debtors added that Marlette's failure to record a declaration of homestead under Massachusetts law had been "the crux of the issue between the debtors and the trustee since of the outset of the Chapter 7 case."

3. The Debtors also amended Schedule E–Creditors Holding Unsecured Priority Claims, to list the Chapter 7 Trustee as the holder of an administrative claim in the sum of $10,000.

claim against Marlette. In their Calculation of Plan Payment section, they indicated that the cost of their plan was $67,715.78. Less than two weeks after filing their post-confirmation amended plan, the Debtors commenced an adversary proceeding against Marlette. The Court entered an amended order confirming the Debtors' plan on October 18, 2004.

In their adversary proceeding, the Debtors represented that they identified their claim against Marlette as an asset in their plan. Additionally, they stated:

> If the Debtors had filed a declaration of homestead prior to filing their bankruptcy petition, the Plymouth Street property would have been immunized from creditors while the Debtors' outstanding debts were being discharged in bankruptcy, and their case would have been deemed to be a no-asset case. The only other potential asset of the estate was a pending lawsuit, which the Trustee would have, in all likelihood, abandoned.

The Debtors alleged that Marlette failed to exercise "the requisite reasonable care and skill of the average qualified practitioner in the field of bankruptcy law by failing to ascertain whether the Debtors had filed a declaration of homestead ... and by failing to advise the Debtors to do so prior to filing their bankruptcy petition." They also alleged that as a proximate result of his negligence "claims totaling $67,715.78, and in all likelihood, an additional $15,000.00 for attorney's fees, will be paid pursuant to the Debtors' confirmed Chapter 13 Plan."

Marlette answered the Complaint, denying the substantive allegations and raising affirmative defenses. Additionally, he filed the Motion to Dismiss that is now before the Court.

## III. THE MOTION TO DISMISS AND ALTERNATIVE MOTION TO STAY

### A. *The Defendant's Position*

Marlette maintains that the Plaintiffs have in fact suffered no present actual damages at this point in time. He states the following:

> Because the underlying bankruptcy case is still pending and the Plaintiffs have not yet sustained any harm due to any conduct of the Defendant, and because the amount of damages for alleged negligence at this point is speculative, the Plaintiffs' legal malpractice claim against the Defendant is not ripe for adjudication, and this Court lacks subject matter jurisdiction over this case.

Citing *In re Tomaiolo*, 205 B.R. 10 (Bankr.D.Mass.1997)(Chapter 7 trustee determined to have sole right to prosecute prepetition malpractice action for the benefit of the estate), and *In re Gaudette*, 241 B.R. 491 (Bankr.D.N.H.1999)(Chapter 7 Trustee barred from pursing cause of action that belonged to creditors, not the bankruptcy estate), Marlette states that "[a]ssuming *arguendo* that the legal malpractice claim belongs to the bankruptcy estate and not the Plaintiffs, only the Chapter 13 Trustee may pursue the legal malpractice claim and the Plaintiffs have no standing to bring this action."

In his Supplemental Memorandum, Marlette appears to argue that, because the Debtors cited that 11 U.S.C. § 327(e)("[t]he trustee, with the court's approval, may employ ... an attorney....") in seeking authority to employ special counsel, they are relying on that section to create jurisdiction. Additionally, he argues that "a cause of action which is property of the estate vests in the trustee unless abandoned." Citing *Billingham v. Wynn & Wynn, P.C. (In re Rothwell)*, 159 B.R. 374 (Bankr.D.Mass.1993), a Chapter 7

case, and *Dallas Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865 (5th Cir.1971), he asserts that because the Debtors failed to obtain an order compelling the trustee to bring the malpractice claim against him, and because there is not clear manifestation of abandonment by the trustee, the Debtors may not maintain their action against him.

With respect to the Debtors' standing to assert the claim if there are sufficient assets to yield an eventual distribution to them, Marlette maintains that such an analysis is only pertinent to a debtor's standing to appeal an adverse ruling.

### B. *The Debtors' Position*

The Debtors reject the notion that their Complaint is not ripe, arguing that their obligation to pay the Chapter 13 Trustee $67,715.78 to save their residence was a reasonably foreseeable consequence of Marlette's failure to record a declaration of homestead on their behalf, and he is liable to them for that amount, plus any attorneys' fees needlessly incurred in connec-

tion with their Chapter 13 case. They add that, if they fail to make their plan payments, the Chapter 13 trustee will move to convert their case to Chapter 7 and, thus, "one way of another, the Jacksons will suffer a loss of $67,715.78." The Debtors also maintain that staying the action against Marlette will jeopardize the success of their Chapter 13 plan, particularly as recovery against him is a key component of their plan.

In their Supplemental Memorandum, the Debtors note that the cases cited by Marlette are inapposite because they are Chapter 7 cases in which debtors attempted to bring law suits in their own name. Recognizing that there is conflicting authority, they urge the Court to adopt the reasoning of *Cable v. Ivy Tech State College (In re Cable)*, 200 F.3d 467 (7th Cir. 1999), in which the United States Court of Appeals for the Seventh Circuit determined that a Chapter 13 debtor-in-possession has standing to sue on behalf of the estate.[4] The Debtors also argue that be-

---

4. The court in *Cable v. Ivy Tech State College,* observed the following:

> In liquidation proceedings, only the trustee has standing to prosecute or defend a claim belonging to the estate. *See In re New Era, Inc.,* 135 F.3d 1206, 1209 (7th Cir.1998) (holding that Chapter 7 trustee has exclusive right to represent debtor in court); *see also Lambert v. Fuller Co.,* 122 B.R. 243, 245 (E.D.Pa.1990); *Gulley v. Winnebago County Forest Preserve Dist.,* No. 91–C20231, 1992 WL 185938 (N.D.Ill. May 7, 1992); *In re Davis,* 158 B.R. 1000, 1002 (Bankr.N.D.Ind.1993). The same cannot be said for trustees under the reorganization chapters. In those regimes, the debtor has express authority to sue and be sued. Bankruptcy Rule 6009, which applies to Chapters 7, 11 and 13, directs that "[w]ith or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate

> before any tribunal." Fed. R. Bankr.P. 6009 (emphasis added); *see also Chapman v. Currie Motors, Inc.,* 65 F.3d 78, 81 (7th Cir.1995) (holding that federal courts have jurisdiction to hear state law claims brought by Chapter 13 debtor-in-possession); *In re Kutner,* 3 B.R. 422, 426 (Bankr. N.D.Tex.1980) (stating that Chapter 13 debtor has standing to sue and be sued). Furthermore, the Chapter 13 debtor has been considered analogous to Chapter 11, *see e.g., Chapman,* 65 F.3d at 79, which grants the debtor full authority as representative of the estate typical of a trustee. *See* 11 U.S.C. § 1107; *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 461 (6th Cir.1982); *In re Halux, Inc.,* 665 F.2d 213, 216 (8th Cir.1981).
> Chapter 13 grants the debtor possession of the estate's property, 11 U.S.C. § 1306(b), which is defined by § 541 to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The phrase "legal or equitable interests ... in proper-

cause they are solvent they have standing to bring the action in their own name.

## IV. DISCUSSION

 The Court finds that Marlette's position is without merit. In the first place, the Court rejects Marlette argument that the Debtors are relying upon 11 U.S.C. § 327(e), which they cited in their Motion to Employ Special Counsel, to establish jurisdiction. In view of the provisions of Fed. R. Bankr.P. 6009 ("With or without court approval, the trustee or debtor in possession may ... commence and prosecute any action or proceeding in behalf of the estate before any tribunal."), the Court finds that, although Rule 6009 may be technically inapplicable,[5] it was not inappropriate for the Debtors to obtain Court approval to employ special counsel, a motion to which the Chapter 13 trustee did not object.

Courts and commentators have recognized that "[t]here is no specific section of Chapter 13 authorizing the debtor to commence or continue lawsuits by or against the debtor." Keith M. Lundin, *Chapter 13 Bankruptcy 3d Ed.*, § 54.1 (Bankruptcy Press, Inc.2002).[6] Judge Lundin in his treatise observes the following:

> 11 U.S.C. § 1303 gives the debtor in a Chapter 13 case, exclusive of the trustee, the rights and powers of a trustee under several subsections of § 363. By this cross-reference, § 363(b) and (d) permit the debtor in a Chapter 13 case to use, sell or lease property of the estate. A debtor's cause of action becomes property of the Chapter 13 estate under §§ 541 and 1306. It can be argued that the debtor's right to use property of the estate includes prosecution of a cause of action that became property of the Chapter 13 estate. Although there is no cross-reference to § 323 in § 1303, one reported bankruptcy court decision finds support for a Chapter 13 debtor's right to sue in the legislative history to § 1303.

*Id.* (footnotes omitted).[7] Judge Lundin noted that "many reported decisions," in-

---

ty" includes choses in action and other legal claims that could be prosecuted for benefit of the estate. *See In re Smith,* 640 F.2d 888 (7th Cir.1981) ("All causes of action become property of the estate under section 541."); *see also Bauer v. Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir.1988); *In re FBN Food Serv., Inc.,* 185 B.R. 265, 273 (N.D.Ill.1995); *In re U.S. Marketing Concepts, Inc.,* 113 B.R. 487, 490 (Bankr. N.D.Ind.1990). The chose in action, here a discrimination case, belongs to the estate and was being prosecuted for the benefit of its creditors. It would frustrate the essential purpose of § 1306 to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit the estate. Significantly, the Second and Third Circuits have agreed that Chapter 13 debtors can bring claims in their own name. *See Olick v. Parker & Parsley Petroleum Co.,* 145 F.3d 513, 515 (2d Cir.1998); *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1209 n. 2 (3d Cir.1992); *see also Donato v. Metropolitan Life Insurance Co.,*

230 B.R. 418, 425 (N.D.Cal.1999); *In re Wirmel,* 134 B.R. 258, 260 (Bankr.S.D.Ohio 1991).
200 F.3d at 472–73.

5. The term "debtor in possession" is a term of art applicable to Chapter 11 cases only. *See* 11 U.S.C. § 1101(1).

6. Similarly, "[e]xcept to protect exemptions, the Code does not specifically authorize Chapter 13 debtors to assert the strong-arm powers in § 544, to avoid statutory liens under § 545, to recover preferences under § 547 or to avoid fraudulent transfers under § 548." Lundin, *supra,* at § 53.1. According to Judge Lundin, there is little disagreement that the Chapter 13 trustee has standing to bring avoidance and recovery actions, but debtors generally have been refused these powers except to protect their exemptions. *See id.,* at § 60.3.

7. Section 323 provides:
(a) The trustee in a case under this title is the representative of the estate.

cluding several circuit court decisions, have concluded that it is permissible for Chapter 13 debtors to commence or continue lawsuits alone or in conjunction with the trustee. *Id.* (citing, *inter alia, Cable v. Ivy Tech State College (In re Cable)*, 200 F.3d 467 (7th Cir.1999); and *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513 (2d Cir.1998)).

In *In re Bowker*, 245 B.R. 192, 196 (Bankr.D.N.J.2000), the court observed that there are three lines of cases with respect to the standing of Chapter 13 debtors to sue as representatives of the bankruptcy estate. It articulated the issue before it as "whether a chapter 13 trustee has standing to pursue prepetition litigation that is property of the chapter 13 estate," and stated:

> Those courts that have decided this question have come to three distinct conclusions: (1) the chapter 13 trustee has the exclusive standing to sue on behalf of the estate; (2) the chapter 13 debtor and the trustee have concurrent authority to proceed on behalf of the estate or (3) the debtor alone has the necessary standing to prosecute litigation on behalf of the bankruptcy estate. This court concludes that it is the debtor alone who has the authority to retain special counsel and pursue a cause of action that is

> (b) The trustee in a case under this title has capacity to sue and be sued.

11 U.S.C. § 323.

**8.** The court cited *Richardson v. United Parcel Serv.*, 195 B.R. 737 (E.D.Mo.1996); *Northrup v. Ben Thompson Enters. (In re Northrup)*, 220 B.R. 855 (Bankr.E.D.Pa.1998); *Gardner v. Tyson (In re Gardner)*, 218 B.R. 338 (Bankr.E.D.Pa.1998) and *Bryer v. Hetrick (In re Bryer)*, 216 B.R. 755 (Bankr.E.D.Pa.1998), for the proposition that the Chapter 13 trustee has exclusive standing. It cited *Cable v. Ivy Tech State College*, 200 F.3d 467 (7th Cir. 1999); *Donato v. Met. Life Ins. Co.*, 230 B.R. 418 (N.D.Cal.1999); *Travelers Indem. Co. of Ill. v. Griner (In re Griner)*, 240 B.R. 432

property of the chapter 13 bankruptcy estate.

245 B.R. at 194 (footnotes omitted).[8]

The Debtors' claim against Marlette is property of their bankruptcy estate. This Court, in contrast to the court in *In re Tomaiolo*, need not decide whether the Debtors' alleged malpractice claim against Marlette arose prepetition or postpetition because, in either event, the claim is property of the Debtors' Chapter 13 bankruptcy estate. *See* 11 U.S.C. §§ 541 and 1306. Moreover, the Debtors did not claim an exemption with respect to any judgment they might recover against Marlette, and the success of their plan is in part dependent upon their success with respect to their claim against Marlette. As the court stated in *Bowker*,

> There are practical reasons why the debtor alone should control, and be responsible for, litigation. If the standing chapter 13 trustee were the representative of the estate for litigation purposes it would impose a huge, additional administrative burden. After all, one cannot be a party to litigation without assuming responsibility for its prosecution. The trustee would have to investigate the existence of potential litigation, assess its merits, and make a cost benefit

(Bankr.S.D.Ala.1999) and *In re Wirmel*, 134 B.R. 258 (Bankr.S.D.Ohio 1991), for the proposition that the Chapter 13 trustee and the debtor have concurrent standing; and it cited *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir.1991); *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513 (2d Cir. 1998); *Merchants & Farmers Bank v. Vail*, 1996 WL 819806 (N.D.Ala.1996); *In re James*, 210 B.R. 276 (Bankr.S.D.Miss.1997); *Kelsey v. Waste Management of Alameda County*, 76 Cal.App.4th 590, 90 Cal.Rptr.2d 510 (1999) and *Dance v. Louisiana State Univ. Med. Ctr.*, 749 So.2d 870 (La.Ct.App.1999), for the proposition that the debtor alone has sufficient standing to bring suit.

analysis of pursuing the claim. *See Gardner*, 218 B.R. at 342. If litigation was determined to be prudent, the trustee would have to select and retain counsel and might need expert witnesses and investigators. The trustee would incur expenses for filing fees, transcripts and other costs of litigation and would need to be involved in formulating litigation strategy, discovery and negotiating settlement. Eventually the trustee would be involved in trial and possibly appeal. Inevitably disputes would arise between the trustee and the debtor concerning decisions made, and actions taken or not taken by the trustee. In this district each standing chapter 13 trustee has tens of thousands of active chapter 13 cases at any one time. Among those cases are dozens, if not hundreds, of causes of action. To require that the trustee be a party to all litigation on behalf of the chapter 13 estates would subject the trustee to an impossible responsibility.

From the debtor's point of view, it makes sense to leave the chapter 13 debtor in charge of litigation. Chapter 13 is a completely voluntary proceeding. A debtor cannot be forced into chapter 13, §§ 303(a) and 706(c), and has the right to forego a discharge and dismiss a case if he or she sees fit. § 1307(b). As the Second Circuit Court of Appeals declared, "in Chapter 13 proceedings (unlike Chapter 7 proceedings) the creditors' recovery is drawn from the debtor's earnings, not from the assets of the bankruptcy estate; it is only the Chapter 13 debtor who stands to gain or lose from efforts to pursue a cause of action that is an asset of the bankruptcy estate." *Olick v. Parker & Parsley*, 145 F.3d at 516. The court went on to conclude that "the trustee's participation in such an action is generally not needed to protect the Chapter 13 creditors'

rights." *Id.* Judge Lundin, citing *Wirmel*, stated that "[i]f the Chapter 13 debtor has the exclusive right to 'use' the lawsuit under §§ 1303 and 363, then the debtor should control all aspects of the litigation, including settlement." 1 Lundin, Chapter 13 Bankruptcy § 3.45, at 3–39. "The reality of a filing under Chapter 13 is that the debtors are the true representatives of the estate and should be given the broad latitude essential to control the progress of their case." *[In re] Freeman*, 72 B.R. [850] at 854 [(Bankr.E.D.Va.1987)] (citations omitted). Thus, from the perspective of either the debtor or the trustee it makes sense to have the debtor be responsible for litigating causes of action that are property of the estate. That would include engaging special litigation counsel. *Bowker*, 245 B.R. at 200.

This Court is persuaded by the reasoning in *Bowker*. The Court concludes that the Debtors have standing to prosecute a malpractice claim against Marlette and that a determination of his alleged negligence is ripe for determination as a proceeding related to the Debtors' bankruptcy case. *See* 28 U.S.C. §§ 1334 and 157.

## V. CONCLUSION

In view of the foregoing, the Court finds that Marlette has failed to sustain his burden with respect to dismissal of the Debtors' adversary proceeding or a stay until the underlying bankruptcy case is concluded. The Court finds that the adversary proceeding is ripe for determination as the Debtors have standing to sue Marlette and use any recovery to satisfy their plan payments with excess proceeds enuring to their benefit. Accordingly, the Court shall enter an order denying Marlette's Motion.