Joyce MARTIN, Appellant,

v.

**CLINICAL PATHOLOGY LABORATORIES, INC., Appellee.**

No. 05–09–01079–CV.

Court of Appeals of Texas, Dallas.

June 8, 2011.

Jason C.N. Smith, Art Brender, Law Office of Art Brender, Fort Worth, TX, for Appellant.

Kirte M. Kinser, Brown McCarroll, L.L.P., Dallas, TX, Kurt Howard Kuhn, Kurt Kuhn, PLLC, Austin, TX, for Appellee.

Graham Baker, Law Office of Graham Baker, PLLC, San Antonio, for Other Party in Interest.

Before Justices FITZGERALD, LANG–MIERS, and FILLMORE.

## OPINION

Opinion by Justice FITZGERALD.

Appellant Joyce Martin sued appellee Clinical Pathology Laboratories, Inc. (CPL) for wrongful termination, contending that Texas recognizes a wrongful-termination cause of action against an employer that terminates an at-will employee for exercising her right to vote in a general election. The trial court dismissed the case, and Martin appealed. We affirm.

## I. BACKGROUND

### A. Allegations

Appellant alleged the following facts in her original petition. Appellant was an employee of CPL for three years. On November 4, 2008, she requested permission to leave work early to vote in the general election. CPL refused. Appellant left work fifteen minutes early in order to go vote. Two days later, CPL terminated appellant. According to her petition, "[appellant] asserts that [CPL] terminated her for exercising her right to vote," and that CPL's conduct proximately caused damages to appellant.

### B. Procedural history

On March 16, 2009, appellant sued CPL for wrongful termination. CPL answered and filed special exceptions, contending that appellant had failed to assert a viable cause of action under Texas law. Appellant filed a response, and CPL filed a reply brief. The trial judge sustained CPL's special exceptions and ordered appellant to replead within ten days on pain of dismissal. Instead, ten days later appellant filed a notice of appeal. A few weeks later, on October 1, 2009, the trial judge signed an order dismissing the case with prejudice. We treat appellant's notice of appeal as a timely filed notice of appeal from the order of dismissal. *See* TEX.R.APP. P. 27.1(a).

In our review of the record, we discovered the following footnote in appellant's response to CPL's special exceptions:

> Due to financial hardship, Plaintiff has recently filed Chapter 13 Bankruptcy proceedings. To date, counsel for Plaintiff has not been retained by the Bankruptcy Trustee to further pursue Plaintiff's claim. However, counsel for Plaintiff files this response in order to protect the rights of Plaintiff. Counsel for Plaintiff would request that the Court postpone this hearing until proper action may be taken in the bankruptcy proceeding.

Because bankruptcy can affect a claimant's standing to sue, we asked the parties to submit additional information regarding appellant's bankruptcy. Appellant filed a letter advising us that she filed for bankruptcy on February 3, 2009, and that the bankruptcy case was dismissed on September 18, 2009. We then invited the parties to file jurisdictional briefs. Appellant filed a letter brief in which she contends that she had and has standing to sue. CPL filed a responsive letter brief, with additional evidence attached, in which it did not take a definite position on the standing question.

## II. STANDING

### A. Standing and bankruptcy

 Standing is a component of subject-matter jurisdiction. *Douglas v. Delp,*

987 S.W.2d 879, 882 (Tex.1999); *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 735 (Tex.App.-Dallas 2007, pet. denied); *see also DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex.2008) ("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it.") (footnote omitted). Thus, standing cannot be waived, and we may examine standing sua sponte if necessary. *See OAIC*, 234 S.W.3d at 735; *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex.1993) (noting that standing "may be raised for the first time on appeal by the parties or by the court"). The general test for standing is whether there is a real controversy between the parties that will actually be determined by the judgment sought. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. "To establish standing, a person must show a personal stake in the controversy." *In re B.I.V.*, 923 S.W.2d 573, 574 (Tex.1996) (per curiam). Standing must exist at the time a plaintiff files suit; if the plaintiff lacks standing at the time of filing, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing. *Doran v. ClubCorp USA, Inc.*, No. 05–06–01511–CV, 2008 WL 451879, at *2 (Tex.App.-Dallas Feb. 21, 2008, no pet.) (mem. op.); *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 703 (Tex.App.-Fort Worth 2006, pet. denied). And the standing doctrine requires a controversy to continue to exist between the parties at every stage of the legal proceedings, including the appeal. *City of Dallas v. Woodfield*, 305 S.W.3d 412, 416 (Tex.App.-Dallas 2010, no pet.).

■ Bankruptcy can affect a debtor's standing to sue. When a person files a bankruptcy petition, she loses all right, title, and interest in all of her property, and her property is then vested in her bankruptcy estate. *See* 11 U.S.C.A. § 541(a)(1) (West 2004); *Douglas*, 987 S.W.2d at 882; *Kilpatrick*, 205 S.W.3d at 701. The bankruptcy estate includes any legal claims the debtor owned when she filed the bankruptcy petition. *Douglas*, 987 S.W.2d at 882. The bankruptcy trustee is the representative of the estate. 11 U.S.C.A. § 323(a) (West 2004). In a case involving a Chapter 11 bankruptcy, the Texas Supreme Court has held that the bankruptcy trustee has exclusive standing to assert claims that are owned by the estate. *Douglas*, 987 S.W.2d at 881, 882.

■ But appellant filed for bankruptcy under Chapter 13, and Chapter 13 bankruptcies have some distinctive features. Although a Chapter 13 debtor loses all right, title, and interest in her property under § 541(a)(1), she "remain[s] in possession of all property of the estate" under § 1306. *See* 11 U.S.C.A. § 1306(b) (West 2004). Thus, every federal circuit court that has addressed the issue has concluded that Chapter 13 debtors retain standing to sue on claims that are owned by the bankruptcy estate. *Smith v. Rockett*, 522 F.3d 1080, 1081–82 (10th Cir.2008); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1331 n. 2 (11th Cir.2004); *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472–74 (7th Cir.1999); *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515–16 (2d Cir.1998); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1209 n. 2 (3d Cir.1992). Other courts and commentators agree that Chapter 13 debtors have standing to sue. *Jackson v. Marlette (In re Jackson)*, 317 B.R. 573, 578–80 (Bankr.D.Mass.2004); *Ex parte Moore*, 793 So.2d 762, 765 (Ala.2000); *Kelsey v. Waste Mgmt. of Alameda Cnty.*, 76 Cal.App.4th 590, 90 Cal.Rptr.2d 510, 514 (Cal.Ct.App.1999); *Dance v. La. State Univ. Med. Ctr.*, 749 So.2d 870, 873 (La.Ct. App.1999); 8 COLLIER ON BANKRUPTCY ¶ 1303.04 (16th ed.2011, Alan N. Resnick & Henry J. Sommer, eds. in chief) ("Certain

rights, such as the right to bring a lawsuit ..., are implicit in section 1306(b), which allows the debtor to retain possession of all property of the estate...."). A few bankruptcy courts have concluded that a Chapter 13 debtor lacks standing to prosecute claims held by the bankruptcy estate. *See Jackson,* 317 B.R. at 579 n. 8 (collecting cases).

The courts adopting the majority rule that Chapter 13 debtors retain standing to sue have reasoned that it would frustrate the purpose of § 1306(b) to grant the debtor possession of legal claims but deny the debtor the authority to pursue those claims for the benefit of the estate. *See, e.g., Smith,* 522 F.3d at 1081 (citing *Cable,* 200 F.3d at 473). Moreover, under Chapter 13, creditors draw their recoveries from the debtor's earnings, not the assets of the bankruptcy estate, so the trustee's participation in the prosecution of a legal claim by the debtor is generally not needed to protect the creditors' rights. *Olick,* 145 F.3d at 516. Additionally, some legislative history supports the propriety of a Chapter 13 debtor's standing to sue. *Smith,* 522 F.3d at 1081–82.

Chapter 13 of the Bankruptcy Code includes another provision that is potentially relevant in this case. Under § 1327, "the confirmation of a plan vests all of the property of the estate in the debtor" except as otherwise provided in the plan or the order confirming the plan. 11 U.S.C.A. § 1327(b) (West 2004). Section 1327(b) "implements a major theme of chapter 13 by preserving to the debtor ownership, as well as possession, of all property, whether acquired before or during the chapter 13 case, except as otherwise required to effectuate the confirmed plan." 8 COLLIER ON BANKRUPTCY, *supra,* at ¶ 1327.03 (footnotes omitted).

Notwithstanding the special features of Chapter 13 bankruptcy, the Fort Worth Court of Appeals has held that a plaintiff's prior filing and dismissal of a Chapter 13 bankruptcy deprived him of standing to assert certain claims. *Kilpatrick,* 205 S.W.3d at 701–03. In that case, the debtor filed two different Chapter 13 bankruptcies, both of which were dismissed. *Id.* at 695. He later filed a lawsuit in Texas state court. He had never disclosed the existence of his claims in his Chapter 13 bankruptcies. *Id.* at 702. The Fort Worth Court of Appeals held that the debtor's claims passed into his bankruptcy estate when he filed his first Chapter 13 bankruptcy case, and that the claims did not revest in the debtor when the bankruptcy was dismissed because he never disclosed his claims in that bankruptcy proceeding. *Id.* at 703. The debtor pointed out that his bankruptcy case was under Chapter 13, but the court of appeals held that he still lacked standing because "[f]ull disclosure of assets is required regardless of the chapter under which the bankruptcy was brought." *Id.* at 703.

## B. Application of the law to the facts

Because we are questioning standing for the first time on appeal, we safeguard appellant's rights by construing her petition in her favor and reviewing the entire record to determine if any evidence supports standing. *See Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 853 (Tex. 2000); *Tex. Ass'n of Bus.,* 852 S.W.2d at 446. Appellant's petition, filed March 16, 2009, reveals no standing defect on its face. In response to our request for additional information, appellant disclosed that she filed for Chapter 13 bankruptcy on February 3, 2009—about three months after she was terminated, and about six weeks before she filed this lawsuit. Appellant has also supplied us with the docket sheet from her bankruptcy case, which indicates that her Chapter 13 plan was

confirmed on May 19, 2009, and the bankruptcy court's order dismissing her case without prejudice on September 18, 2009. CPL filed additional evidence consisting of appellant's bankruptcy schedules and her statement of financial affairs, which were filed in the bankruptcy case on February 26, 2009. Appellant did not disclose the existence of her wrongful-termination claim in those documents.

We conclude that appellant possessed standing to sue at the time she filed suit. Most courts that have considered the question have held that a debtor who files for Chapter 13 bankruptcy retains standing to sue on a claim within the bankruptcy estate. *See, e.g., Smith,* 522 F.3d at 1081–82. We agree with the reasoning found in those opinions. Moreover, we conclude that appellant's failure to disclose her claim in her bankruptcy schedules before filing this lawsuit did not deprive her of standing. We have found no authority that a Chapter 13 debtor loses her standing to prosecute a claim merely because she files a bankruptcy schedule that fails to disclose that claim. *See Kelsey,* 90 Cal. Rptr.2d at 514 n. 2 ("No court has concluded that a debtor's concealment or failure to list a cause of action in bankruptcy schedules has any bearing on the debtor's standing to sue."). We conclude that appellant retained standing to sue after filing her Chapter 13 bankruptcy proceeding and that she possessed standing to sue at the time she filed suit, even though she had thus far failed to disclose the claim in her bankruptcy schedules. *Cf. Thompson v. Quarles,* 392 B.R. 517, 529 (S.D.Ga.2008) ("While a case is open, a debtor can freely amend his schedules.") (internal quotations and citations omitted).

■ The question then becomes whether appellant lost standing to prosecute her wrongful-termination claim when her bankruptcy case was dismissed after her

Chapter 13 plan had been confirmed. We conclude that *Kilpatrick* is distinguishable and that appellant did not lose standing when her bankruptcy case was dismissed. In *Kilpatrick,* the dismissal of the debtor's bankruptcy was fatal to his standing because his claim passed into his bankruptcy estate and remained there at the time his case was dismissed because the claim had never been disclosed. 205 S.W.3d at 701–02. There is no indication in the *Kilpatrick* opinion that the bankruptcy court ever confirmed a Chapter 13 plan for the debtor or that the property in the bankruptcy estate otherwise revested in him. In this case, by contrast, appellant's bankruptcy estate did not own her wrongful-termination claim when the bankruptcy case was dismissed because the claim had previously revested in her when her Chapter 13 plan was confirmed on May 19, 2009. Under § 1327(b), the confirmation of her plan vested all property of the estate in appellant, except as provided in the plan or in the order confirming the plan. 11 U.S.C.A. § 1327(b). We do not have appellant's plan or the order confirming her plan before us, but the bankruptcy-court docket sheet supports the fact of confirmation and contains nothing to indicate that all of appellant's property did not revest in her upon confirmation of her plan. We have found little case authority on point, but a few courts have stated that § 1327(b) revests property in the debtor even if the debtor has failed to disclose the property in her schedules. *See In re Henneghan,* No. 03–01216, 2009 WL 2855835, at *1 (Bankr.D.C. June 15, 2009) ("Unless the plan or the confirmation order provides otherwise, the property of the estate vesting in a debtor pursuant to § 1327(b) includes unscheduled property."); *In re Kelly,* 358 B.R. 443, 446–47 (Bankr. M.D.Fla.2006); *In re Thompson,* 344 B.R. 461, 464 (Bankr.W.D.Va.2004); *EconoLube N' Tune, Inc. v. Frausto (In re Frausto),*

259 B.R. 201, 217 (Bankr.N.D.Ala.2000). As one court reasoned, Congress could have excepted undisclosed claims from § 1327(b) but did not do so; thus, even undisclosed claims revest in the debtor. *In re Kelly*, 358 B.R. at 447. We agree with these courts and conclude that the evidence of confirmation of appellant's plan is some evidence that her wrongful-termination claim revested in her on May 19, 2009. Thus, there is evidence that her claim was no longer property of the bankruptcy estate when her bankruptcy case was later dismissed, and that the dismissal did not affect her standing to sue on her wrongful-termination claim.

Because some evidence supports appellant's standing, we proceed to the merits of the case.

### III. ANALYSIS

Appellant's only issue on appeal is whether she stated a claim for which relief may be granted against her employer.

### A. Standard of review

 We review a trial court's ruling on special exceptions for abuse of discretion. *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 876 (Tex. App.-Dallas 2005, no pet.). Even under the abuse-of-discretion standard, however, we review the trial court's determination of legal questions de novo. *Moeller v. Blanc*, 276 S.W.3d 656, 660–61 (Tex.App.-Dallas 2008, pet. denied); *see also Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008) (even under abuse-of-discretion standard, appellate courts "do not defer to the trial court on questions of law") (footnote omitted). When a trial court dismisses a case on special exceptions for

failure to state a cause of action, we review that determination of law de novo. *Filipp v. Till*, 230 S.W.3d 197, 203 (Tex. App.-Houston [14th Dist.] 2006, no pet.); *Butler Weldments Corp. v. Liberty Mut. Ins. Co.*, 3 S.W.3d 654, 658 (Tex.App.-Austin 1999, no pet.). When conducting our review, we accept as true all material factual allegations in the pleadings and all facts reasonably inferable from those allegations. *Filipp*, 230 S.W.3d at 203; *Butler Weldments*, 3 S.W.3d at 658.

### B. Applicable law

 The general rule in Texas is that absent a specific agreement to the contrary, employment may be terminated by either the employer or the employee at will, for good cause, bad cause, or no cause at all. *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 739 (Tex.2006); *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998). The legislature has created several statutory exceptions to the employment-at-will doctrine. For example, statutory causes of action exist in favor of employees who are terminated for filing workers' compensation claims in good faith, TEX. LAB.CODE ANN. §§ 451.001–.003 (West 2006), because of jury service, TEX. CIV. PRAC. & REM.CODE ANN. §§ 122.001–.002 (West 2011), or because of their race, color, disability, religion, sex, national origin, or age, TEX. LAB. CODE ANN. §§ 21.051, 21.254. The Texas Supreme Court has recognized only one common-law exception to the employment-at-will doctrine: a "narrow exception" that "covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act." *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex.1985).[1]

1. The supreme court once recognized a second common-law exception that applied when an employer terminated an employee

principally to avoid contributing to or paying benefits under the employee's pension fund, but it withdrew its opinion after the United

After *Sabine Pilot*, Texas courts have rebuffed many attempts to enlarge the number of exceptions to the at-will doctrine. *See, e.g., Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 606 (Tex.2002) (refusing to recognize exception for termination based on negligent investigation); *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex.2000) (refusing to recognize exception for termination in violation of duty of good faith and fair dealing); *Winters v. Houston Chronicle Publ'g Co.*, 795 S.W.2d 723, 724–25 (Tex.1990) (refusing to recognize exception for termination in retaliation for whistleblowing); *Hancock v. Express One Int'l, Inc.*, 800 S.W.2d 634, 636–37 (Tex.App.-Dallas 1990, writ denied) (refusing to expand *Sabine Pilot* to terminations for refusing to perform illegal acts carrying only civil penalties); *Brunner v. Al Attar*, 786 S.W.2d 784, 785–86 (Tex.App.-Houston [1st Dist.] 1990, writ denied) (refusing to recognize exception for termination in retaliation for off-hours volunteer work for AIDS Foundation); *see also Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 715–16 (Tex.2003) (indicating Texas does not recognize exception for termination based on negligent drug testing). Texas's policy in favor of the employment-at-will doctrine is so strong that we have said that judicial exceptions to it should be created by the supreme court and not the intermediate courts of appeals. *See Hancock*, 800 S.W.2d at 636 ("It is not for an intermediate appellate court to undertake to enlarge or extend the grounds for wrongful discharge under the employment-at-will doctrine. If such an exception is to be created, the Texas Supreme Court should do so."); *accord Simmons Airlines v. Lagrotte*, 50 S.W.3d 748, 752 (Tex.App.-Dallas 2001, pet. denied).

In *Sabine Pilot*, the Texas Supreme Court adopted the lone common-law exception to the at-will doctrine because it determined that public policy required it. *See* 687 S.W.2d at 735 ("We now hold that public policy, as expressed in the laws of this state and the United States which carry criminal penalties, requires a very narrow exception to the employment-at-will doctrine...."). Appellant relies on the Texas Constitution and the Texas Election Code to show that Texas public policy requires a further exception to the employment-at-will doctrine. The most relevant constitutional provision is article VI, § 2(c): "The privilege of free suffrage shall be protected by laws regulating elections and prohibiting under adequate penalties all undue influence in elections from power, bribery, tumult, or other improper practice." TEX. CONST. art. VI, § 2(c).[2] Appellant also relies on the following provision from the Texas Election Code:

> (a) A person commits an offense if, with respect to another person over whom the person has authority in the scope of employment, the person knowingly:

States Supreme Court held that any such cause of action was federally preempted. *See McClendon v. Ingersoll–Rand Co.*, 779 S.W.2d 69 (Tex.1989), *rev'd*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), *op. withdrawn on remand*, 807 S.W.2d 577 (Tex.1991) (per curiam).

**2.** Appellant also cites §§ 1, 2, 3, and 19 of article I and § 1 of article VI, but she does not explain how they support her argument. We do not consider these provisions relevant to the issue presented. *See* TEX. CONST. art. I, § 1 (statement of the importance of the "right of local self-government"); *id.* art. I, § 2 (pledging the faith of the people of Texas "to the preservation of a republican form of government"); *id.* art. I, § 3 (equal rights clause); *id.* art. I, § 19 (providing that citizens may not be disenfranchised "except by due course of the law of the land"); *id.* art. VI, § 1 (classes of persons not allowed to vote).

(1) refuses to permit the other person to be absent from work on election day for the purpose of attending the polls to vote; or

(2) subjects or threatens to subject the other person to a penalty for attending the polls on election day to vote.

(b) It is an exception to the application of this section that the person's conduct occurs in connection with an election in which the polls are open on election day for voting for two consecutive hours outside of the voter's working hours.

(c) In this section, "penalty" means a loss or reduction of wages or another benefit of employment.

(d) An offense under this section is a Class C misdemeanor.

TEX. ELEC.CODE ANN. § 276.004 (West 2010). According to appellant, the constitution and election code demonstrate a strong Texas public policy in favor of protecting the right to vote, and an exception to the at-will doctrine is needed to effectuate that public policy. Appellant argues that her termination violated this criminal statutory provision.

## C. Application of the law to the facts

■ In keeping with the standard of review, we quote the material passages from appellant's live pleading:

Plaintiff was a loyal and competent employee of Defendant for three (3) years. On November 4, 2008, Plaintiff requested permission to go vote in the general election so she could cast her vote for the President of the United States and other offices. Defendant refused. Plaintiff left work fifteen minutes early (at 5:15 p.m[.]) to go vote for change in this country before the polls closed at 7:00 p.m. On November 6, 2008, Defendant terminated Plaintiff.

. . .

Defendant terminated Plaintiff for voting, in violation of Section 276.004 of the Texas Election Code, and/or Texas public policy.

Plaintiff has a right to vote guaranteed by the United States and Texas Constitutions, and the exercise of that vote is protected by Section 276.004.

Plaintiff asserts that Defendant terminated her for exercising her right to vote. Plaintiff asserts that under Texas law, an employer is prohibited from terminating an employee for exercising their right to vote, and that an employee may bring a cause of action for damages against an employer as a public policy exception to the employment at will doctrine.

Under the appropriate standard of review, we accept these facts as true and infer in appellant's favor any other facts that may reasonably be inferred from her allegations. At oral argument and in her post-submission brief, appellant stated she voted after leaving work and that her pleadings supported that fact. The question presented is whether an at-will employee who leaves work early to vote in an election and who is subsequently terminated has a private cause of action for wrongful termination.

Appellant cites several reasons in support of her contention that the Texas policy in favor of protecting the right to vote requires a common-law exception to the employment-at-will doctrine. First, she relies on the constitutional requirement that the government must adopt laws providing "adequate penalties" against improper practices that cause "undue influence in elections." *See* TEX. CONST. art. VI, § 2(c). Appellant points to § 276.004 of the election code. According to appellant, the criminal penalties prescribed in § 276.004 of the election code are not "ade-

quate," so the constitution requires additional common-law reinforcement in the form of a private wrongful-termination cause of action.

Appellant's reliance on § 276.004 of the election code reinforces our view that it is normally the function of the Texas Legislature to weigh the policy considerations and promulgate laws after careful consideration of all ramifications. The legislature has weighed the policy considerations at stake and adopted § 276.004 to prescribe a specific penalty for employers who interfere with the right to vote. Appellant does not explain why the criminal penalties prescribed by the legislature are inadequate, nor does she identify any workable judicial standard for us to use in assessing the adequacy of a penalty. Section 2(c) of article VI of the Texas Constitution is not sufficient warrant for us to depart from our practice of deferring to the Texas Supreme Court in the creation of exceptions to the at-will doctrine.

Our discussion of the criminal penalties should not suggest our agreement with appellant's argument that her employer violated § 276.004. We remain convinced appellant's pleading does not support this position. Section 276.004 contains an important exception, making it inapplicable if "the polls are open on election day for voting for two consecutive hours outside of the voter's working hours." The election code provides that the polls shall be open between 7 a.m. and 7 p.m. Tex. Elec.Code Ann. § 41.031 (West 2010). Appellant's pleading refers only to the evening hours and alleges the polls closed at 7 p.m. and that she left work at 5:15 p.m. Appellant did not allege when her working hours commenced. We cannot presume two consecutive hours were not available to appellant outside of working hours within which to vote. If appellant started work at or after 9 a.m., she had a two-hour window of

opportunity during which to vote, and that period would have triggered the exception contemplated by § 276.004 of the election code. Thus, appellant's pleading failed to show a violation of § 276.004 of the election code.

In addition, appellant argues that we should imply a civil cause of action from § 276.004 of the election code. According to appellant, it is "not unusual" for appellate courts to imply causes of action from criminal statutes. We reject appellant's argument. "When a private cause of action is alleged to derive from a constitutional or statutory provision, our duty is to ascertain the drafters' intent." *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004) (footnote omitted). "We apply a strict rule of construction to statutory enforcement schemes and imply causes of action only when the legislative intent is clear from the language of the statute." *Abatement Inc. v. Williams*, 324 S.W.3d 858, 864 (Tex.App.-Houston [14th Dist.] 2010, pet. denied). And penal statutes are strictly construed. *Brown*, 156 S.W.3d at 565; *cf. A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (stating that the penal code does not create private causes of action). Nothing in § 276.004 reveals any intent to create a private cause of action. Indeed, the legislature's decision not to impose civil liability in this context contrasts with its decisions to adopt statutory exceptions to the at-will doctrine in other contexts. The legislature's silence on the subject of civil liability in § 276.004 suggests that it did not intend to create an exception in this context. *See Winters v. Houston Chronicle Publ'g Co.*, 795 S.W.2d 723, 724 & n. 1 (Tex.1990) (noting the many statutory exceptions to the at-will doctrine, and refusing to create a new common-law exception for whistleblowers).

## D. Conclusion

Our general rule is that we, as an intermediate appellate court, will not adopt new common-law exceptions to the employment-at-will doctrine. *Hancock*, 800 S.W.2d at 636. Appellant does not persuade us to depart from that rule in this case. We decline to adopt a new exception to the employment-at-will doctrine applicable to the facts appellant has alleged. Accordingly, we resolve appellant's sole issue on appeal against her.

## IV. DISPOSITION

We affirm the judgment of the trial court.