**Affirmed and Opinion Filed February 13, 2024**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00264-CV**

**WILLOW TREE CONSULTING GROUP, LLC, LIQUIDATING TRUSTEE OF THE TH LIQUIDATING TRUST, Appellant**
**V.**
**PERKINS COIE LLP AND PERKINS COIE LLC, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-09847**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Breedlove
Opinion by Justice Carlyle

Willow Tree Consulting Group, LLC sued Perkins Coie LLC and Perkins

Coie LLP for breach of fiduciary duty, legal malpractice, fraudulent transfers, and

participatory liability. In a single issue on appeal, Willow Tree argues the trial court

reversibly erred when it granted Perkins Coie's motions for summary judgment and

dismissed all its claims. We affirm in this memorandum opinion. *See* TEX. R. APP.

P. 47.4.

**Background**

A former Perkins Coie partner, Michael Osterhoff, supplied legal counsel to seven affiliated healthcare companies (collectively, "True Health") from March 2015 through March 2017. During this time, True Health recapitalized via a series of credit agreements, became insolvent, filed for relief under Chapter 11 of the Bankruptcy Code, and became subject to a bankruptcy plan. Willow Tree, as trustee, filed suit against Perkins Coie on July 28, 2021, alleging that its involvement in True Health's recapitalization tortiously caused over a hundred million dollars in losses. Perkins Coie filed five traditional motions for summary judgment attacking Willow Tree's (1) standing to pursue select claims, (2) breach of fiduciary duty claim, (3) legal malpractice claim, (4) participatory liability claims, and (5) fraudulent transfer claims. The trial court granted all five motions and entered final judgment against Willow Tree.

**Standard of review and applicable law**

We review a traditional summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). On appellate review, we take evidence favorable to the nonmovant as true, we indulge every reasonable inference, and we resolve every doubt in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589

S.W.3d 127, 131 (Tex. 2019). If the movant satisfies its burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. Where, as here, the trial court's orders granting summary judgment do not specify the grounds relied upon, we affirm if any of the summary judgment grounds presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). A defendant who conclusively negates at least one of the essential elements of a cause of action is entitled to summary judgment as a matter of law. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

**Analysis**

(1) Standing

Perkins Coie's first motion for summary judgment argued Willow Tree could not prevail on its allegedly assigned negligent misrepresentation and fraudulent transfer claims because it lacked standing to bring those claims at the time it filed suit. "Standing is a component of subject matter jurisdiction." *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999). "Without subject matter jurisdiction, courts may not address the merits of a case." *Id.* "Standing must exist at the time a plaintiff files suit; if the plaintiff lacks standing at the time of filing, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing." *Martin v. Clinical Pathology Labs, Inc.*, 343 S.W.3d 885, 888 (Tex. App.—Dallas, 2011, pet. denied). To prevail on its motion for summary judgment, Perkins Coie had the

burden to prove that there was no genuine issue as to any material fact concerning Willow Tree's standing at the time it filed suit and that it was entitled to judgment as a matter of law. *See Park Place Hosp. v. Est. of Milo*, 909 S.W.2d 508, 510 (Tex. 1995).

The record contains an assignment agreement from True Health's creditors to Willow Tree dated January 25, 2021; this was the only operative assignment of claims at the time Willow Tree filed suit.[1] This original assignment explicitly prohibits Willow Tree from pursuing causes of action "against any Professional that is an Exculpated Party or a Released Party" and incorporates definitions from the bankruptcy plan. The plan defines (1) "Exculpated Parties" to include Perkins Coie LLP and (2) "Professional" to include "any professional Person or Entity employed in this Case by Court order pursuant to Bankruptcy Code sections 327, 328, 363, or 1103 or otherwise." Although Willow Tree correctly argues that the bankruptcy plan limits exculpation to post-petition conduct taken in connection with the plan, that provision does not alter (1) the fact that the assignment in place at the time Willow Tree filed suit unambiguously prohibited it from commencing or prosecuting any cause of action against a professional that is an exculpated party or (2) our

---

[1] While Willow Tree subsequently secured an amended assignment agreement from True Health's creditors, it is irrelevant for the purposes of analyzing standing at the time it filed suit. *See Martin*, 343 S.W.3d at 888.

–4–

conclusion that Perkins Coie is a professional that is an exculpated party under the plan.

Based on the record before us, Perkins Coie satisfied its burden to prove there was no genuine issue of material fact concerning Willow Tree's standing to sue Perkins Coie for negligent misrepresentation and fraudulent transfer claims that had not been assigned to Willow Tree at the time it filed suit. The burden then shifted to Willow Tree to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. In its response, Willow Tree argued (1) it received a valid assignment that was effective as of the effective date of the bankruptcy plan, December 6, 2019, (2) the plan did not have a deadline for assignment of claims, (3) Perkins Coie lacked standing to challenge the terms of the claim assignments, and (4) it had authority under the plan to decide the terms of claim assignments. The trial court's order granting summary judgment does not specify the grounds on which it was granted; therefore, we affirm if any of the summary judgment grounds presented to the trial court are meritorious. *Provident Life & Accident Ins. Co.*, 128 S.W.3d at 216.

Both the bankruptcy court's order and the bankruptcy plan state that the creditors' claims "shall be assigned." We conclude this was a directive to the creditors as opposed to a judicial mandate assigning their claims. *Cf. In re Mirant Corp.*, No. 03-46590DML11, 2007 WL 1258932, at *11 (Bankr. N.D. Tex. Apr. 27, 2007) (claims "shall be assigned" and liquidation may proceed "upon such

assignment"); *In re Lack's Stores, Inc.*, No. 10-60149, 2010 WL 8033320, at *3 (Bankr. S.D. Tex. Nov. 16, 2010) ("[O]n the Effective Date, the Lease and Personalty shall be assigned by the Debtors . . ."). Thus, even when we take evidence favorable to Willow Tree as true, indulge every reasonable inference, and resolve every doubt in its favor, the absence of a deadline for the creditors to assign their claims is inapposite.

Willow Tree also argues that Perkins Coie lacked standing to challenge the assignment's allocation of litigation recoveries because Perkins Coie did not identify any "injury" or "personal stake" therein. The Third Circuit has addressed parties' "bankruptcy standing" to "object to the confirmation of a reorganization plan in bankruptcy court." *See In re Global Technologies, Inc.*, 645 F.3d 201, 210 (3d Cir. 2011). Neither we nor the trial court are a bankruptcy court; as such, neither is tasked with addressing the merits of True Health's bankruptcy. *See* 28 U.S.C. § 1334 (a) & (e) (establishing original and exclusive jurisdiction for bankruptcy proceedings). Thus, we reject Willow Tree's challenge to Perkins Coie's standing to challenge Willow Tree's standing because bankruptcy standing is not implicated.

Finally, Willow Tree argues the bankruptcy plan provided the trustee with the authority to agree to terms of claim assignments. Even when we take evidence favorable to Willow Tree as true, indulge every reasonable inference, and resolve every doubt in its favor, the trustee's authority cannot confer standing at the time Willow Tree filed suit because the original assignment expressly precluded it.

Thus, the trial court did not reversibly err when it granted Perkins Coie's first motion for summary judgment based on the absence of standing because it was entitled to judgment concerning the allegedly assigned causes of action as a matter of law. *See KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

(2) Breach of fiduciary duty

Perkins Coie's second motion for summary judgment addressed Willow Tree's breach of fiduciary duty claim. "[B]reach of fiduciary duty by a lawyer involves the integrity and fidelity of an attorney and focuses on whether an attorney obtained an improper benefit from representing the client." *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied) (cleaned up). In its live pleading, Willow Tree alleged Perkins Coie "reap[ed] financial rewards to which it was not entitled given the fraudulent nature of the transaction and True Health's insolvency" and that True Health is "entitled to the disgorgement of the fees it paid to Perkins Coie." In its motion for summary judgment, Perkins Coie correctly argued that a law firm obtaining its fees "is not, standing alone, an improper benefit sufficient to constitute a breach of fiduciary duty." *Ashton v. KoonsFuller, P.C.*, No. 05-16-00130-CV, 2017 WL 1908624, at *4 (Tex. App.—Dallas May 10, 2017, no pet.) (mem. op.). Even when we indulge every reasonable inference and resolve every doubt in Willow Tree's favor, Perkins Coie satisfied its burden to show that no genuine issue of material fact existed as to whether it received an improper benefit

–7–

when it collected fees for its legal work and that it was entitled to judgment on Willow Tree's breach of fiduciary duty claim as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84.

The burden then shifted to Willow Tree to raise a genuine issue of material fact precluding summary judgment. *Id.* Willow Tree's response to Perkins Coie's motion for summary judgment did not argue that Perkins Coie received an improper benefit and failed to attach any evidence raising a genuine issue of material fact thereon. Instead, Willow Tree's response focused on Osterhoff and specifically argued (1) its breach of fiduciary duty claim seeks recovery of three million dollars in improper benefits Osterhoff obtained from True Health; (2) the crux of its claim is that Osterhoff "obtained an improper benefit from representing True Health"; and (3) its claim "focuses on whether a Perkins Coie partner obtained an improper benefit from his representation of True Health." Each of these allegations focuses on an alleged improper benefit to an individual rather than to Perkins Coie as a law firm. Thus, Perkins Coie conclusively negated at least one of the essential elements of Willow Tree's breach of fiduciary duty claim and was entitled to summary judgment as a matter of law. *Frost Nat'l Bank*, 315 S.W.3d at 508.

(3) Legal malpractice

In its third motion for summary judgment, Perkins Coie argued Willow Tree could not prevail on its legal malpractice claim because it was filed outside of the two-year statute of limitations. *See Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex.

–8–

2019). Willow Tree argued, both to the trial court and on appeal, that (1) its injury was inherently undiscoverable and that its claim remained viable under the discovery rule and (2) the statute of limitations was tolled because True Health was adversely dominated by wrongdoers. *See S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996) (inherently undiscoverable); *Resol. Tr. Corp. v. Bright*, 872 F. Supp. 1551, 1561 (N.D. Tex. 1995) (adverse domination). Beginning with the discovery rule, Perkins Coie had the burden to prove there was no genuine issue of material fact as to when Willow Tree knew, or in the exercise of reasonable diligence should have known, of the facts giving rise to its legal malpractice claim. *See Marcus & Millichap Real Est. Inv. Servs. of Nevada, Inc. v. Triex Texas Holdings, LLC*, 659 S.W.3d 456, 461 (Tex. 2023).

The discovery rule applies when a plaintiff's injury is by its nature inherently undiscoverable. *Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 139 (Tex. 2019). "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Berry v. Berry*, 646 S.W.3d 516, 525–26 (Tex. 2022). In the fiduciary context, the nature of an injury is presumed to be inherently undiscoverable because "[f]iduciaries are presumed to possess superior knowledge." *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). Thus, we presume the nature of True Health's injury was inherently undiscoverable. This presumption shifts the burden of producing evidence to Perkins Coie. *Gen. Motors Corp. v. Saenz on Behalf of Saenz*,

–9–

873 S.W.2d 353, 359 (Tex. 1993). "Once that burden is discharged and evidence contradicting the presumption has been offered, the presumption disappears and is not to be weighed or treated as evidence." *Id.* (cleaned up).

The record before us conclusively rebuts the presumption that the nature of True Health's injury was inherently undiscoverable. Specifically, Willow Tree's live petition alleged that: (1) the United States Department of Justice served a Civil Investigative Demand on True Health on March 2, 2017; (2) this demand "broadly require[d] the production of information regarding True Health's inappropriate business practices and activities"; (3) the Department of Justice "solicited information related to an ongoing [False Claims Act] investigation that involved allegations of medically unnecessary laboratory testing, improper billing for laboratory testing, and illegal remuneration provided by True Health in violation of [42 U.S.C. section 1320b-7b and the Ethics in Patient Referral Act]"; (4) True Health received a notice of suspension of Medicare payments based on "credible allegations of fraud" on May 26, 2017; and (5) True Health's response to this suspension notice asserted that it "would bring about financial ruin for True Health and impair its ability to continue providing services."

The record before the trial court at the time also showed that (1) True Health received an on-site records request from a Medicare Zone Program Integrity Contractor as early as May of 2016 that notified it of potential aberrancies in its billing and that it was under investigation for "potential fraud, waste, and abuse" and

–10–

(2) after receiving this records request, True Health's Chief Compliance Officer sent an email to Osterhoff and True Health's CEO that stated, (a) "This is not a routine site visit or audit, and needs to be handled with the utmost care" because such investigations "often work in conjunction with law enforcement" and (b) "[T]he fact that they showed up on site today tells me that either they may have already sent a letter requesting data . . . or they believe they have found a pattern in their data analysis that warranted an actual site visit with a demand for additional claims documentation." In its verified response to interrogatories, Willow Tree identified its Chief Compliance Officer as an "innocent insider." *See In re Fair Fin. Co.*, 834 F.3d 651, 677 (6th Cir. 2016) (collecting authorities on the "innocent insider exception" to the sole actor rule).

Even when we indulge every reasonable inference and resolve every relevant doubt in Willow Tree's favor, the record conclusively demonstrates that True Health's Chief Compliance Officer was both a corporate agent and an innocent insider who had actual notice of misconduct that could no longer be ignored more than two years before the lawsuit was filed on July 28, 2021. *See Marcus & Millichap Real Est. Inv. Servs. of Nevada, Inc.*, 659 S.W.3d at 462. The record also shows that True Health's Chief Compliance Officer had sufficient notice of facts that made her duty-bound to her principal to investigate further and that her notice of this need to investigate further was imputed to her principal. *See Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enterprises*, 625 S.W.2d 295, 300 (Tex. 1981) ("We

–11–

regard it as well settled that if an agent's acts are within the scope of his authority, then notice to the agent of matters over which the agent has authority is deemed notice to the principal.").

Thus, the Chief Compliance Officer's notice put True Health on notice that it needed to exercise reasonable diligence with respect to its legal malpractice claim more than two years before it filed suit on July 28, 2021. *Marcus & Millichap Real Est. Inv. Servs. of Nevada, Inc.*, 659 S.W.3d at 462–63; *see also Williams v. Jennings*, 755 S.W.2d 874, 883 (Tex. App.—Houston [14th Dist.] 1988, writ denied) ("In this connection, it is immaterial that the principal has not actually been informed of the particular facts under consideration, and a principal may be deemed to be bound by knowledge that his agent, by the use of ordinary care, could have acquired, especially where the agent has information sufficient to instigate an inquiry."). When True Health's Chief Compliance Officer received the Civil Investigative Demand, it "knew or should have known that something was amiss." *Berry*, 646 S.W.3d at 525. Thus, True Health needed to conduct a reasonable inquiry if it wanted to preserve its claim. *Id.*

Perkins Coie therefore satisfied its burden and proved there was no genuine issue of material fact as to when True Health knew, or in the exercise of reasonable diligence should have known, of the facts giving rise to its legal malpractice claim. The burden then shifted to Willow Tree to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. In its response to Perkins

Coie's motion for summary judgment, Willow Tree acknowledged that even when all its arguments were accepted as true, Perkins Coie had the burden to show that the statute of limitations began to run before July 30, 2017. Willow Tree's live petition nonetheless clearly, deliberately, and unequivocally asserted that it received notice of potential wrongdoing through its Chief Compliance Officer (an "innocent insider") on May 11, 2016, and March 2, 2017; these assertions are judicial admissions proving that True Health knew or should have known that something was amiss before July 30, 2017. *See In re M.T-G.*, No. 05-21-00763-CV, 2022 WL 178688, at *3 (Tex. App.—Dallas Jan. 20, 2022, no pet.) (mem. op.); *see also Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). Thus, its injury was not inherently undiscoverable and the discovery rule did not apply.

Willow Tree also argues the statute of limitations on its legal malpractice claim was tolled because it pleaded True Health was adversely dominated by wrongdoers and that this pleading shifted the burden to Perkins Coie to negate the adverse domination doctrine in its motion for summary judgment. *White Nile Software, Inc. v. Travis*, No. 05-20-00354-CV, 2022 WL 3714497, at *4 (Tex. App.—Dallas Aug. 29, 2022, pet. filed). There, Perkins Coie argued that the adverse domination doctrine is inapplicable as a matter of law because it only applies to claims against those who dominated the corporation. *See FDIC v. Henderson*, 61 F.3d 421, 428 (5th Cir. 1995) ("Texas follows the 'majority test' . . . [I]f a majority of *the board of directors* are culpably involved in the alleged wrongdoing, then we

–13–

assume that the corporation was adversely dominated and was thus unable to pursue a direct action against the wrongdoing directors.") (emphasis added); *see also FDIC v. Shrader & York*, 991 F.2d 216, 227 (5th Cir. 1993). In response, Willow Tree acknowledged that True Health was adversely dominated by its own officers and directors as opposed to Perkins Coie.

On appeal, however, Willow Tree counters by arguing Perkins Coie is not an outsider because Osterhoff was an insider and "Osterhoff *is* Perkins." We decline to equate the partner of a law firm with a law firm for three reasons. First, Willow Tree did not make this argument to the trial court and cannot make it for the first time on appeal. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Second, Willow Tree cites to no authority for this novel proposition of law. TEX. R. APP. P. 38.1(i). Third, limited liability companies and partnerships are legally distinct from their members. *Rieder v. Woods*, 603 S.W.3d 86, 98 (Tex. 2020) (limited liability companies); *Am. Star Energy & Mins. Corp. v. Stowers*, 457 S.W.3d 427, 429 (Tex. 2015) (citing Tex. Bus. Orgs. Code § 152.056) (partnerships).

While we acknowledge Willow Tree's argument that the adverse domination doctrine has been expanded by some courts to include outsiders,[2] we also recognize that despite the passage of more than 30 years, Willow Tree has cited no decision

---

[2] *See Askanase v. Fatjo*, 828 F. Supp. 465, 471–72 (S.D. Tex. 1993) (collecting authorities).

expanding this doctrine under Texas law, and we have found none. TEX. R. APP. P. 38.1(i). Under the circumstances, we conclude that Perkins Coie met its burden to negate the application of the adverse domination doctrine because True Health was dominated by its own officers and directors and Texas' application of the doctrine has not been expanded beyond insiders. Therefore, the trial court did not reversibly err when it followed Texas precedent concerning the adverse domination doctrine.

Thus, Willow Tree did not raise a genuine issue of material fact precluding summary judgment against its legal malpractice claim and the trial court did not reversibly err when it granted summary judgment thereon.

(4) Participatory liability

Perkins Coie's fourth motion for summary judgment argued that Willow Tree could not prevail on its claims for conspiracy and aiding and abetting because (1) the trial court had already granted its motion for summary judgment on Willow Tree's breach of fiduciary duty claim and (2) it could not be vicariously liable "for any supposedly unlawful acts by Michael Osterhoff." We agree, albeit for reasons unaddressed by either party.

"The harmless error rule states that before reversing a judgment because of an error of law, the reviewing court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause 'the rendition of an improper judgment,' or that the error 'probably prevented the appellant from properly presenting the case [on appeal].'" *G & H Towing Co. v.*

–15–

*Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (quoting TEX. R. APP. P. 44.1(a)). "The rule applies to all errors." *Id.* Here, the trial court's granting of summary judgment on Willow Tree's participatory liability claims was harmless based on other grounds already raised in the case. *Cf. id.* at 298 (summary judgment on a cause of action unaddressed in a motion therefor "is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case.").

It is well established that "civil conspiracy is a theory of derivative liability." *Agar Corp.*, 580 S.W.3d at 144. Similarly, knowing participation and aiding and abetting are theories of liability as opposed to independent causes of action. *See Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.) (knowing participation); *John Roberts Austin I, LP v. Netaji*, No. 03-21-00540-CV, 2023 WL 3010941, at *2–3 (Tex. App.—Austin Apr. 20, 2023, pet. denied) (mem. op.) (aiding and abetting). Thus, Willow Tree's theories of participatory liability are dependent upon its breach of fiduciary duty claim, a claim on which the trial court previously granted non-reversible summary judgment. *See supra*. Without an underlying tort, there can be no participatory liability for civil conspiracy or aiding and abetting as a matter of law. *Agar Corp., Inc.*, 580 S.W.3d at 141 (civil conspiracy); *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930–31 (Tex. 2010) (aiding and abetting); *cf. G & H Towing Co.*, 347 S.W.3d at 297 (quoting TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS: PRACTICE, PROCEDURE AND REVIEW § 3.06[3] at 3–20 (3d ed. 2010) ("If . . . the

unaddressed causes of action are derivative of the addressed cause of action, the summary judgment may be affirmed.")). Thus, there was no genuine issue of material fact as to Perkins Coie's liability for participatory liability and the trial court did not reversibly err when it granted Perkins Coie's fourth motion for summary judgment.

(5) Fraudulent transfers

In its fifth motion for summary judgment, Perkins Coie argued Willow Tree could not prevail on its claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA") because those claims are precluded by the anti-fracturing rule. Under TUFTA, "an asset transferred with actual intent to hinder, delay, or defraud a creditor may be reclaimed for the benefit of the transferor's creditors unless the transferee took [the asset] in good faith and for a reasonably equivalent value." *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562 (Tex. 2016) (cleaned up). In its live pleading, Willow Tree alleged that (1) True Health paid Perkins Coie "for legal advice that was inadequate and incorrect"; (2) these payments "represented transfers of an interest of True Health in property"; and (3) these transfers were fraudulent under Texas law. Perkins Coie's fifth motion for summary judgment argued that these allegations "run headlong into the anti-fracturing rule."

"The anti-fracturing rule prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as fraud, breach of contract, breach of fiduciary duty, or DTPA violations." *Won Pak v.*

*Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied). "The rule prevents legal malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims to avail themselves of longer limitations periods, less onerous proof requirements, or other tactical advantages." *Parsons v. Queenan*, No. 05-15-01375-CV, 2017 WL 360673, at \*2 (Tex. App.—Dallas Jan. 23, 2017, no pet.) (mem. op.) (cleaned up). "[R]egardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice." *Beck v. Looper, Reed & McGraw, P.C.*, No. 05-05-00724-CV, 2006 WL 1452108, at \*2 (Tex. App.—Dallas May 26, 2006, no pet.) (mem. op.); *accord Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied). Whether allegations of fraud against an attorney are properly characterized as claims for professional negligence is a question of law. *Won Pak*, 313 S.W.3d at 457.

Perkins Coie's motion for summary judgment included verified interrogatory responses from Willow Tree evidencing (1) its position that Perkins Coie "received compensation in excess of both industry standards and beyond that which would constitute reasonably equivalent value in exchange for the compensation given that defendants' advice and representation was grossly flawed and resulted in the bankruptcy of True Health" and (2) Willow Tree's attempt to recover fees paid by True Health to Perkins Coie "for legal services related to general business advice

and/or compliance or regulatory matters." Perkins Coie's motion also cited to this Court's precedent for the proposition that "claims regarding the quality of the lawyer's representation of the client are professional negligence claims[.]" *Murphy*, 241 S.W.3d at 696–97. Therefore, Perkins Coie satisfied its burden and showed that it was entitled to judgment as a matter of law because (1) there was no genuine issue of material fact as to whether the crux of Willow Tree's allegation was that True Health paid Perkins Coie for legal advice that was inadequate and incorrect; (2) the crux of Willow Tree's allegation was that True Health's counsel did not provide adequate legal representation; and (3) Willow Tree's claim is therefore one for legal malpractice. *See Beck*, 2006 WL 1452108, at \*2. The burden then shifted to Willow Tree to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84.

In its response, Willow Tree argued that the gravamen of its TUFTA claim focused on True Health's conduct and its intent to make cash unavailable to its creditors as evidenced by five "badges of fraud." *See Qui Phuoc Ho v. MacArthur Ranch, LLC*, 395 S.W.3d 325, 328 (Tex. App.—Dallas 2013, pet. denied). These badges of fraud include the alleged facts that (1) transfers were made at a time that True Health incurred substantial liabilities and debts, (2) transfers were contractually concealed, (3) True Health knew it was likely to be sued, (4) "the value of the consideration received by True Health was not reasonably equivalent to the value of the Perkins Coie [p]ayments," and (5) True Health was insolvent at the time of the

–19–

transfers or became insolvent shortly thereafter. *See* TEX. BUS. & COM. CODE § 24.005(b).

Even taking evidence favorable to Willow Tree as true, indulging every reasonable inference, and resolving every doubt in its favor, Willow Tree's response to Perkins Coie's motion for summary judgment clarifies that among the foci of its TUFTA claims is "the benefit [True Health] received in exchange for the various distributions." Despite characterizing its claim as an attempt to recover overpayment for legal services compared to the perceived benefit, the crux of Willow Tree's claim remains an attack on Perkins Coie's inadequate legal representation. *See Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (DTPA claim alleging "a gross disparity between the value of legal services received and the consideration paid" was properly characterized as a legal malpractice claim).

Thus, Willow Tree failed to raise a genuine issue of material fact precluding summary judgment and the trial court did not reversibly err when it granted summary judgment against Willow Tree's TUFTA claims.

\*          \*          \*

Having overruled Willow Tree's sole issue on appeal, we affirm the judgment of the trial court.

/Cory L. Carlyle//
CORY L. CARLYLE
JUSTICE

230264f.p05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILLOW TREE CONSULTING
GROUP, LLC, LIQUIDATING
TRUSTEE OF THE TH
LIQUIDATING TRUST, Appellant

No. 05-23-00264-CV     V.

PERKINS COIE LLP AND
PERKINS COIE LLC, Appellees

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-09847.
Opinion delivered by Justice Carlyle.
Justices Goldstein and Breedlove
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees PERKINS COIE LLP AND PERKINS COIE LLC recover their costs of this appeal from appellant WILLOW TREE CONSULTING GROUP, LLC, LIQUIDATING TRUSTEE OF THE TH LIQUIDATING TRUST.

Judgment entered this 13th day of February, 2024.